William DONTA, Jr.,
Plaintiff-Appellant,

v.

Thomas HOOPER; Charles F. Hunter; Larry Brooks; Floyd Rose; Jeff Altherr; Jack Morgan; James Mannering; Anthony Robinson, Defendants-Appellees,

State of Ohio, et al., Defendant.

No. 84–3288.

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1985.

Decided Oct. 11, 1985.

Rehearing and Rehearing En Banc Denied Dec. 17, 1985.

James H. Moore, III, argued, Ashland, Ky., for plaintiff-appellant.

Henry Arnett, John L. Tanoury, Gene W. Holliker, argued, Ohio Atty. Gen., Columbus, Ohio, Mary Jane McFadden, argued, Dublin, Ohio, for defendants-appellees.

Before LIVELY, Chief Judge, JONES, Circuit Judge, and WEICK, Senior Circuit Judge.

PER CURIAM.

Plaintiff-Appellant, William Donta, Jr. brought suit under 42 U.S.C. § 1983 for illegal search, illegal seizure of property, and illegal arrest. The district court directed a verdict for the defendants on the issue of the search. A jury found that good faith immunity protected the defendants with regard to the seizure and arrest. On appeal, Donta challenges the directed verdict and argues that under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the district court improperly placed the purely legal issue of the defendants' good faith immunity before the jury. Upon consideration of the issues raised on appeal, we affirm the directed verdict, reverse the judgment on the question of illegal seizure, and affirm the judgment that the officers are eligible for good faith immunity on the issue of the arrest.

### I.

Donta and his family lived outside of Oak Hill, Ohio on a 308 acre working farm. Herb McFann, Bobby Simpson, and Everett Hall, Jr. spent the afternoon of December 23, 1978 cutting firewood on Donta's farm.

During the afternoon, the three men began drinking. On his way into town at the end of the afternoon, Donta left a "fifth" bottle of eggnog, which his wife had prepared, in McFann's truck as a Christmas present. After leaving Donta's farm late in the afternoon, Simpson and McFann went to a local tavern known as the "Swamps," where McFann drank a large amount of whisky as part of a drinking contest. McFann was unconscious when he was brought home from the Swamps, and was pronounced dead soon thereafter. Dr. John Cook, the deputy county coroner, subsequently determined that McFann died due to asphyxiation resulting from rapid drinking of alcohol.

On December 23, 1978 Jackson County Deputy Sheriff Larry Brooks, a fourteen-year veteran, learned of McFann's death from the sheriff's dispatcher and went to McFann's residence to investigate. He was told that McFann had been drinking moonshine the day before at Donta's farm, and that McFann had engaged in the drinking contest at the Swamps. At Brooks' request, Thomas Hooper, an agent with the Ohio Department for Liquor Control, came to Jackson County to investigate the possibility that moonshine contributed to McFann's death.

Brooks and Hooper first returned to McFann's residence and then interviewed Simpson, who told them that he had seen a moonshine still on Donta's property. Simpson is of limited intelligence. After observing him in court, the trial judge found Simpson to be visibly and demonstrably handicapped, childlike despite his thirty-one years, but reliable. Brooks testified that he believed Simpson's statements because of the detail with which he described the moonshine still.

On the basis of Simpson's statements, Hooper swore out an affidavit in which he averred that he had "interviewed a confidential informant who has within the past 72 hours personally observed illicit spiritous liquor (moonshine) at the residence of William Donta." Brooks and Hooper then

went before a local judge who issued a search warrant for Donta's property. Brooks and Hooper told the judge that their informant was available outside if the judge wanted to question him. They did not inform the judge of Simpson's limited intellectual capacity.

Pursuant to the search warrant, a party of officers searched Donta's property and home during the afternoon of December 24, 1978. The search party did not discover a moonshine still or any illegal alcohol. They did find a substantial amount of marijuana and Donta's collection of approximately fifty firearms. Donta testified that he acquired the firearms one at a time over the course of thirty-three years, buying some new, some used, and trading for others. A deputy called the serial numbers of approximately seven guns to the sheriff's dispatcher, who ran the numbers through the National Crime Information Center (NCIC) computer. The computer reported that four of the first five guns were listed as stolen. Although this inquiry was rapidly completed at Donta's home, all of the guns were transported to the county sheriff's office. Donta arrived home during the search and accompanied the officers to the sheriff's office, where he participated in checking the serial numbers of his guns.

Later in the evening of December 24, 1978, after all of Donta's firearms had been run through the NCIC computer without uncovering any more stolen weapon entries, Donta was arrested on the basis of a teletype message from the Kentucky State Police which read in part:

> Request you pick up a Bill Donta, white male, approximately 55 years of age. We have info that he has or had in his possession four weapons which were taken in a burglary in our district during 1975.

Donta was booked on a charge noted as "hold for B.A.T.F. [Bureau of Alcohol, Tobacco and Firearms] and K.S.P. [Kentucky State Police]." Donta was held by the Jackson County Sheriff from late in the evening on December 24, until approximately 11 a.m. on the morning of December 26, 1978. He was released when, after several inquiries, the Kentucky State Police informed the Jackson County Sheriff that they did not have a warrant for Donta's arrest and could not expect to get one. No question is raised on appeal regarding the duration of Donta's incarceration.

## II.

First, Donta challenges the district court's decision to grant a directed verdict to the defendants on the issue of whether the officers made intentional or reckless misstatements of fact to the local judge when they sought the search warrant. A district court properly grants a motion for a directed verdict if the evidence, viewed in the light most favorable to the non-moving party, presents no issue of fact upon which reasonable minds could disagree. *See Grimm v. Leinart*, 705 F.2d 179, 181 (6th Cir.1983).

Both parties agree that law enforcement officers are not liable for their actions in executing a search warrant that was obtained by making negligent statements or omissions of fact to the issuing magistrate. Donta maintains that he created a question of fact upon which reasonable minds could disagree, under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), concerning whether the officers obtained the search warrant by making statements either with reckless disregard for the truth or knowing those statements to be false. The defendants emphasize that *Franks* involved suppression of evidence in a criminal prosecution and maintain that in civil actions officers will be liable only if they intentionally misrepresented facts on which the magistrate issued the warrant.

Under either standard, there is no factual question for the jury on the issue of whether the search was illegal. Donta maintains that the officers misled the issuing judge when they presented him with an affidavit in which Hooper stated that he had "interviewed a confidential informant who has within the last 72 hours, personally observed illicit spiritous liquor (moon-

shine) at the residence of William Donta." The officers also allegedly orally characterized their informant, Bobby Simpson, as reliable when he was not, and failed to identify him to the issuing judge.

At trial, Simpson testified that he had seen Donta give McFann eggnog, that he knew what moonshine and a moonshine still were, that he had seen a moonshine still on Donta's farm, and that he had told the truth when Brooks and Hooper interviewed him. Both Officers Brooks and Hooper stated that they found Simpson believable because of the detail with which he was able to describe the still he claimed to have seen at the farm. When the officers went to the judge's home to secure the warrant, they took Simpson with them and informed the judge that he was available for questioning. Upon hearing Simpson's testimony, the district court characterized him as childlike but reliable. There is no evidence from which a reasonable jury could find that the defendants intentionally or recklessly misrepresented Simpson as a reliable observer.

### III.

Donta also challenges the district court's denial of his motion for a directed verdict on his claim that the defendants were not entitled to good faith immunity for the seizure of his firearms. The relevant facts are not in dispute. While searching Donta's home under the search warrant authorizing seizure of illegal liquor or related equipment, the defendants discovered approximately fifty firearms. The defendants do not allege that the firearms had been altered in any way. Without further basis, the sheriffs fed the serial numbers of seven firearms into the NCIC computer. Donta alleges that the firearms were illegally seized. The defendants contend that the firearms were properly seized under the plain view doctrine. The district court found as a matter of law that the sheriffs did not have reason to seize the guns under the plain view doctrine. The district court, however, placed the question of the officers' good faith before the jury, which found that the officers were immune from liability under the doctrine of qualified immunity.

As an initial matter, it was improper for the district court to give the jury the issue of the defendants' objective good faith. Under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this is purely a legal question to be determined by the trial judge prior to trial. In discussing *Harlow*, this Court recently concluded that:

> The trial judge is to apply this purely objective test as a matter of law before discovery occurs. If the law which the defendant is alleged to have violated is clearly established, then the qualified immunity defense should fail and discovery should proceed. If the law is not clearly established, the defendant is immune.

*Windsor v. The Tennessean*, 719 F.2d 155, 165 (6th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984).

The scope of the plain view doctrine was clearly established at the time the defendants seized Donta's guns. Under *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), when police seize evidence under the plain view doctrine, the incriminating nature of the evidence must be "immediately apparent" to the officers. In *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Court modified the operative language of the plain view doctrine, but *Texas v. Brown* is irrelevant to the present case. Under *Harlow* this Court looks to the law as it existed at the time of the official behavior for which the defendants seek immunity. *Harlow*, 457 U.S. at 818, 102 S.Ct. 916, 39 L.Ed.2d 110.

*United States v. Gray*, 484 F.2d 352 (6th Cir.1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974), involved application of the plain view doctrine under a set of facts which are essentially identical to the facts of the present case. The Court found that the plain view doctrine did not justify seizure of firearms found while exe-

cuting a search warrant for evidence of illegal sales of beer.

Here, Officer Brodt inadvertently discovered the rifles in the upstairs clothes closet while searching for alcoholic beverages but it was not "immediately apparent" that the rifles were "evidence incriminating the accused." The rifles were not contraband; there was no nexus between the rifles and the crimes of selling or possessing intoxicating liquor without a license; nor did the officers at that time have any knowledge that the rifles were evidence of any other crimes. It was only after Trooper Brodt had seized the weapons, copied down the serial numbers, left the defendant's premises, and then run the information taken off the rifles through the National Crime Information Center that he learned that they were stolen and hence incriminating. This can hardly be characterized as being "immediately apparent." To allow the police to seize objects, unincriminating at the time of seizure, would not in our view comport with the plain view doctrine.

*Gray*, 484 F.2d at 355.

The defendants maintain that their right to seize the firearms under the plain view doctrine was established by *United States v. Truitt*, 521 F.2d 1174 (6th Cir.1975), which distinguished *Gray*. In *Truitt*, police seized a sawed-off shotgun which was discovered in plain view during a search of a gun and tackle shop for gambling paraphernalia. The Court found the seizure legal on the basis that the proper test is not whether a particular "object is or is not contraband. A sawed-off shotgun, properly registered to its owner, is not contraband, but its lawful possession is, in ordinary experience, rare indeed. There is very little legitimate use for such a weapon. The question is one of probability." *Truitt*, 521 F.2d at 1177. Even under the rule of *Truitt*, however, seizure of Donta's guns was not objectively reasonable. Nothing about Donta's gun collection raised a probability of illegal possession.

The rule of law under *Gray* and *Truitt* was clearly established in 1978 at the time the defendants seized Donta's guns. In fact, in *Gray*, the Court noted that it had expressly accepted and applied this interpretation of *Coolidge v. New Hampshire* on several prior occasions. *Gray*, 484 F.2d at 355 n. 7. As the district court found, the defendants in the present case violated that clear rule. The defendants' subjective good faith in seizing the guns and the jury's finding regarding the defendants' good faith are irrelevant under *Harlow*. Therefore, we reverse the judgment for the defendants based upon the jury finding that the defendants acted in good faith. We direct the district court to enter judgment for Donta based on the jury finding that the defendants seized the guns. We affirm the district court's holding that the seizure occurred without probable cause. This question is remanded for determination of damages.

### IV.

Finally, Donta challenges the district court's denial of his motion for a directed verdict on his claim that the defendants were not entitled to good faith immunity for his arrest. The Jackson County Sheriff arrested Donta on the basis of a teletype message from the Kentucky State Police. The teletype requested the Sheriff to "pick up a Bill Donta.... We have info that he has or had in his possession four weapons that were taken in a burglary...." The teletype then identified the four weapons that the NCIC computer had identified as stolen and that the Sheriff knew to have been in Donta's possession.

The district court found as a matter of law that the officers did not act on probable cause when they arrested Donta. The district court submitted to the jury the issue of the officers' objective good faith when they arrested Donta. The jury found that the officers had acted in good faith and that they were eligible for qualified immunity. As we noted above, under *Harlow v. Fitzgerald*, the officers' objective good faith was not properly a question for

the jury. Nonetheless, as we conclude that the officers' conduct did not violate a clearly established rule of federal law when they arrested Donta, we affirm the jury verdict on this issue.

■ Donta had a clearly established federal right not to be arrested without probable cause. Probable cause is based upon knowledge or reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). The decisive issue in applying *Harlow* to the present case is whether at the time of Donta's arrest it was clearly established as a matter of federal law that the information on which the officers arrested Donta did not amount to probable cause. The defendants knew that four guns in Donta's possession had been reported stolen. When the teletype arrived from the Kentucky State Police requesting the Sheriff's Department to "pick up" Donta because he possessed the stolen guns, the defendants arrested him.

Donta maintains that because the teletype did not recite the existence of a felony warrant for Donta's arrest, the defendants violated a clearly established rule by arresting him. Donta, however, is unable to cite any federal statutory or case authority which holds that a teletype from one police agency to another will establish probable cause to arrest only if the teletype recites the existence of a warrant. The defendants maintain that at the time of Donta's arrest it was clearly established that law enforcement officers could reasonably rely on a teletype from another department. The defendants refer to dicta in *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), to support this proposition. *Whiteley* was a habeas action in which police arrested the petitioner on the basis of a radio bulletin. The department that issued the bulletin in *Whiteley*, however, possessed a warrant. *Id.* at 564 n. 5,

91 S.Ct. at 1034 n. 5. The Supreme Court suppressed evidence secured incident to the arrest on the ground that the warrant was not supported by probable cause and, therefore, the arrest was illegal. The defendants in the present case rely on dicta in *Whiteley* in which the Court noted that "[w]e do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin." *Whiteley*, 401 U.S. at 568, 91 S.Ct. at 1037. The Court continued, however, by observing that "police officers called upon to aid other officers *in executing arrest warrants* are entitled to assume that the officers requesting aid *offered the magistrate the information requisite to support an independent judicial assessment of probable cause.*" *Id.* (emphasis added). This dicta does not clearly establish the reasonableness of relying upon a bulletin that is not supported by a warrant.

■ We do not hold that the sheriffs possessed information that established probable cause to arrest Donta. The district court concluded that the defendants lacked probable cause and the defendants have not appealed from that ruling. We find no reason to disturb the district court's conclusion. We also, however, find no reason to disturb the verdict that the officers were entitled to qualified immunity because they did not violate a clearly established federal rule by arresting Donta on the basis of the teletype. The narrow holding of the Supreme Court in *United States v. Hensley*, —— U.S. ——, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), illustrates that it remains an open question how much reliance law enforcement officers may reasonably place upon a bulletin from another department that does not recite the existence of an arrest warrant.

For the foregoing reasons, we AFFIRM the judgment below in favor of the defendants on the issues of the search and the arrest. We REVERSE the judgment below on the issue of the seizure of Donta's guns, direct the district court to enter judgment in favor of Donta, and REMAND for a determination of damages.