927 F.2d 605
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Antoinette RUSSO (No. 90-3240), Mildred Maloney (No.
90-3241) Plaintiffs-Appellants,
v.
Carl MASSULLO, et al., Defendants-Appellees.
 No. 90-3240, 90-3241.
 United States Court of Appeals, Sixth Circuit.
 March 5, 1991.
 
 On Appeal from the United States District Court for the Northern District of Ohio, 88-00928, 00929, Krenzler, J.
 N.D.Ohio
 AFFIRMED IN PART, RESERVED IN PART.
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges; and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants Antoinette Russo and Mildred Maloney appeal from summary judgments for defendants-appellees Beaver Township, Carl Massullo (chief of the Beaver Township Police Department), Scott Pohlman (an investigator with the Ohio Department of Liquor Control), and various members of the Beaver Township Police Department[1] in two separate actions brought under 42 U.S.C. Sec. 1983 alleging violations of constitutional rights (along with pendent state claims) resulting from a raid by the defendants on a liquor establishment for illegal gambling activities. For the reasons that follow, we affirm in part and reverse in part.
 
 I.
 
 2
 On February 16, 1990, the district court granted summary judgment against each plaintiff in favor of all defendants. Separate notices of appeal were timely filed, and the cases, having arisen out of the same incident, were consolidated for appeal.
 
 
 3
 The facts relevant to this appeal revolve around an armed raid conducted without a warrant on April 16, 1987, at the Stagecoach Restaurant & Lounge ("Stagecoach") located in Beaver Township, Ohio. At approximately 9:30 p.m. defendants Frost and Martin, police officers employed by Beaver Township, entered the premises armed with shotguns and pistols. The purpose of the raid was the "closeout" of an investigation conducted by the Ohio Department of Liquor Control ("ODLC") of gambling in the Stagecoach--a licensed vendor of alcoholic beverages. The closeout consisted essentially of serving notices of noncompliance on the Stagecoach plus seizure of two alleged illegal gambling machines ("video poker machines").
 
 
 4
 When the officers arrived at the Stagecoach, it was featuring a stage entertainer and was comparatively full of customers. According to deposition testimony of plaintiff Russo, the owner of the Stagecoach, and plaintiff Maloney, an employee who had finished her shift at 6:00 p.m. and was listening to the entertainment, officers Frost and Martin entered the premises, pointed their weapons at the persons inside, and ordered everyone inside the establishment to raise their hands over their heads. Approximately five to eight law enforcement officers followed officers Frost and Martin inside. During the first thirty minutes of the raid, a pat-down search of everyone inside the establishment was conducted, and the customers were generally allowed to leave as soon as they were searched. As the raid continued, plaintiff Russo repeatedly asked whether the officers had brought a search warrant but was told that they did not need one. Also, during this time frame, both Russo's and Maloney's purses were searched, and neither was allowed to go to the restroom without being accompanied as far as the door by a female officer. The entire incident lasted approximately two hours, and before leaving, ODLC investigators served the violation notices and seized the two alleged gambling machines.
 
 
 5
 Approximately a week after the raid, investigator Scott Pohlman filed criminal complaints against both Russo and Maloney for violations of Ohio's gambling laws. Also, the Ohio Liquor Control Commission instituted proceedings regarding Russo's continued licensure and, in an order dated February 23, 1988, gave Russo the option of paying a forfeiture of $1400 or having her license suspended from March 22, 1988, until April 5, 1988. Both women were arrested and prosecuted, but the criminal charges were dismissed because no "testimony was offered that the machines in question were designed or adapted to generate a profit." "[P]ursuant to the acquittal rendered in Mahoning County Municipal Court," the Liquor Control Commission set aside the suspension and forfeiture and ordered the case involving Russo's license dismissed. J.A. 394.
 
 
 6
 The investigation of the Stagecoach was begun pursuant to a request by defendant Massullo to the ODLC. Part of Massullo's reason for seeking an outside investigation was an injunction issued in State v. Garono, No. ____ (C.P. Mahoning County April 3, 1985), aff'd in part, Garono v. State, 37 Ohio St.3d 171, 524 N.E.2d 496 (1988), which forbade the state and Beaver Township (among others), their officers, agents, etc., from seizing machines owned by Garono Vending Co., the company that owned the machines inside the Stagecoach. Pohlman denied any knowledge of the injunction.
 
 
 7
 According to Pohlman, who conducted the investigation and led the closeout, he understood Ohio law to require more than mere possession of a poker machine by a liquor establishment in order to establish illegal conduct. Thus, Pohlman's goal in investigating was to obtain or witness a "payoff" from the establishment. Pohlman investigated and asserted that he had observed and obtained payoffs at the Stagecoach. Plaintiffs deny that the Stagecoach made payoffs, and logs kept by Pohlman of his daily activities during the investigation fail to confirm his statements that payoffs were made.
 
 
 8
 Shortly before the raid, ODLC contacted Massullo and requested assistance. Massullo supplied armed officers without inquiring about the investigation and without instructing the officers regarding the use of firearms. According to the plaintiffs, Massullo entered the Stagecoach while his officers were present and praised them. Massullo later issued a press release publicizing the "co-operation" between his department and ODLC.
 
 
 9
 Pohlman characterized the township police department's function as providing security. Pohlman explained that he felt there was a need for additional security because he had observed fights inside the Stagecoach.
 
 
 10
 The principal issues presented in this appeal are (1) whether the district court impermissibly engaged in weighing the evidence and making credibility determinations in considering the motions for summary judgment, (2) whether qualified immunity was precluded by defendants' alleged actual knowledge of a state court injunction prohibiting seizure of the machines or actual knowledge that under Ohio law mere possession of the machines by a liquor establishment was not enough to establish their illegality, (3) whether there was a genuine issue of fact that Beaver Township had a policy or custom that was the moving force behind the alleged constitutional injuries, and (4) whether the district court should entertain the pendent claims.
 
 II.
 A.
 
 11
 In ruling on a motion for summary judgment, the district court must construe all the evidence and inferences to be drawn from the evidence in the light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). Summary judgment is appropriate if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Thus, summary judgment is inappropriate "[w]here the record taken as a whole could ... lead a rational trier of fact to find for the non-moving party." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 12
 A section 1983 action must be based upon violation of a federal constitutional or statutory right. Qualified immunity is available to officials performing discretionary functions unless "the contours of the right that the government official allegedly violated [were] 'sufficiently clear that a reasonable official would have understood that what he is doing violates that right.' " Poe v. Haydon, 853 F.2d 418, 425 (6th Cir.1988) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)), cert. denied, 488 U.S. 1007 (1989). When the dispositive issue is qualified immunity, the court should deny summary judgment if there is a genuine issue of fact on which the question of immunity turns. Id. Rulings on qualified immunity and summary judgments are reviewed de novo. Eugene D. v. Karman, 889 F.2d 701, 706 (6th Cir.1989), cert. denied, 110 S.Ct. 2631 (1990); Storer Communications, Inc. v. National Ass'n of Broadcast Employees, 854 F.2d 144, 146 (6th Cir.1988).
 
 B.
 
 13
 In granting summary judgment for the defendants, the district court held that a state statute which granted ODLC the right to conduct an administrative inspection of liquor establishments coupled with the belief that gambling violations were occurring on the premises justified the defendants' actions. The district court held that the statements of Pohlman were sufficient to establish probable cause for the seizure and arrest. The court also held that the pat-down search and the presence of armed officers was reasonable under the circumstances, but the court failed to discuss the alleged pointing of the weapons at persons inside the Stagecoach. Finally, the district court held that there was no evidence of an established custom or policy by Beaver Township upon which to base liability.
 
 
 14
 Plaintiffs challenge the district court's ruling as an improper weighing of the evidence and resolution of disputed issues of fact. Plaintiffs also point to alleged actual knowledge on the part of the defendants that their conduct was illegal and argue that liability is proper against Beaver Township given defendant Massullo's final control over day-to-day law enforcement matters.
 
 C.
 
 15
 Given the emphasis the parties in this case place upon what was or what was not clearly established Ohio law, we feel compelled at the outset of our discussion to point out that the proper focus in section 1983 actions is upon whether a federal constitutional or statutory right is clearly established. See Washington v. Starke, 855 F.2d 346, 348 (6th Cir.1988). Although a state supreme court decision may clearly establish a right, Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir.1988), the right must originate in federal constitutional or statutory law. See Dunn v. Tennessee, 697 F.2d 121, 125 (6th Cir.1982), cert. denied, 460 U.S. 1086 (1983). Thus, in this case, we are concerned with Ohio law only to the extent of its impact upon plaintiffs' federal rights. The right we first examine is plaintiffs' Fourth Amendment right to be free from an unreasonable search.
 
 
 16
 Since the liquor industry is a pervasively regulated industry, a legislative body can provide for a warrantless administrative inspection of liquor establishments. Colonnade Catering Corp. v. United States, 397 U.S. 72 (1970). The search in this case was conducted pursuant to an Ohio statute which purports to give the ODLC authority to "[i]nspect, upon demand, the books, accounts, records, memorandums, and place of business of any [liquor establishment]." Ohio Rev.Code Ann. Sec. 4301.10(A)(6). However, at the time of the search, it was clearly established that even where a legislative body provides for an administrative inspection of a liquor establishment without consent, but has "made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its restrictive rules apply." Colonnade Catering, 397 U.S. at 77.
 
 
 17
 Plaintiffs point out that after the raid, the statute which authorizes warrantless administrative inspections was struck down by the Supreme Court of Ohio as unconstitutional for failing to establish time, place, and scope limitations on warrantless searches. State v. VFW Post 3562, 37 Ohio St.3d 310, 525 N.W.2d 773 (1988). Since the statute had not been struck down at the time of the raid, defendants rely on the rule that "[s]tate statutes like federal ones are entitled to [a] presumption of constitutionality until their invalidity is judicially declared." Beech v. Melancon, 465 F.2d 425, 426 (6th Cir.1972), cert. denied, 409 U.S. 114 (1973); see also V-1 Oil Co. v. Wyoming, 902 F.2d 1482, 1489 (10th Cir.), cert. denied, 111 S.Ct. 295 (1990). Although we agree with the defendants that they had a right to conduct an administrative inspection based on the presumptive constitutionality of the statute, we do not agree that the statute was enough to clothe in qualified immunity those actions which went beyond those specifically authorized by the statute. See Colonnade Catering, 396 U.S. at 77.
 
 
 18
 Defendant Pohlman also seeks to justify the search on the basis that the draw poker machines inside the Stagecoach were "gambling devices," Ohio Rev.Code Ann. Sec. 2915.01(F), the mere presence of which inside a liquor establishment constituted a crime. See Ohio Admin.Code Sec. 4301:1-1-53 [hereinafter "Reg. 53"]. However, as we previously intimated, we do not question defendants' right to enter and inspect, but we do question the scope and manner of the inspection.
 
 D.
 
 19
 Turning again to plaintiffs' clearly established rights, at the time of the raid, it was clearly established that the authority to search a tavern did not give accompanying authority to search persons inside the tavern absent a reasonable belief that the particular person searched was involved in criminal activity or was dangerous.[2] Ybarra v. Illinois, 444 U.S. 85, 93-94 (1979). Also, as mentioned earlier, it was clearly established that where a legislative body provides for an administrative inspection of a liquor establishment without consent, but makes "no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." Colonnade Catering, 397 U.S. at 77. It was also clearly established at the time of the raid that reasonableness is the "ultimate standard ... embodied in the Fourth Amendment." Hill v. McIntyre, 884 F.2d 271, 277 (6th Cir.1989) (quoting Michigan v. Summers, 452 U.S. 692, 699-700 (1981)). "[T]he test for the entry itself and all subsequent conduct is whether these are reasonable." Id. (citing Duncan v. Barnes, 592 F.2d 1336, 1338 (5th Cir.1979)). By stepping outside these bounds, a defendant sheds the cloak of qualified immunity.
 
 
 20
 With regard to qualified immunity, the dispositive question becomes whether a reasonable official in the defendants' position could have believed that the scope and manner of the search was reasonable. Poe, 853 F.2d at 423-24. Assuming, as we must, that the underlying factual disputes will be resolved in favor of plaintiffs, we are not convinced that the defendants could have believed that the scope and manner of the search was reasonable. Thus, we hold that summary judgment based on qualified immunity was improper regarding the scope and manner of the search.
 
 
 21
 The defendants attempt to evade liability by pointing to each other. However, their arguments are unpersuasive in light of cases holding that all members of the team are liable where there is a team effort or where the members were an integral part of an unlawful search and seizure. See Bruner v. Dunaway, 684 F.2d 422, 425-26 (6th Cir.1982), cert. denied, 459 U.S. 1171 (1983); Simpson v. Hines, 903 F.2d 400, 403 (5th Cir.1990); Melear v. Spears, 862 F.2d 1177, 1186 (5th Cir.1989); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir.1989). Moreover, on this record, we are not convinced that a jury could not find that Pohlman and Massullo "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." Birrell v. Brown, 867 F.2d 956, 959 (6th Cir.1989).
 
 E.
 
 22
 We next address plaintiffs' argument that qualified immunity is precluded by defendants' alleged actual knowledge that there was an injunction against seizure of the machines and actual knowledge that mere possession of the machines was not enough to establish their illegality. We find this argument more relevant to the seizure of the machines and the arrest of plaintiffs than to the search issue we previously addressed. In dealing with this argument, we find it necessary to recognize a distinction between Pohlman, who instigated the seizure with statements that the Stagecoach was making payoffs, and the other defendants who apparently relied, at least indirectly, on Pohlman's statements.
 
 
 23
 At the time of the complained of acts, it was well-established that law enforcement officers may not effect an arrest or seizure by making false statements knowingly or with reckless disregard as to their truth. See Hill, 884 F.2d at 275 (citing Donta v. Hooper, 774 F.2d 716, 718 (6th Cir.1985) (per curiam), cert. denied, 483 U.S. 1019 (1987); Franks v. Delaware, 438 U.S. 154, 155-56 (1978)); see also Malley v. Briggs, 475 U.S. 335 (1986). Plaintiffs' strongest arguments in regard to the illegality of their arrest and seizure of the machines is that they would not have occurred but for Pohlman's alleged false statements that payoffs were made.
 
 
 24
 We examine plaintiffs' arguments recognizing that our inquiry regarding qualified immunity is not into an officer's subjective beliefs, but center on the objective reasonableness of the officer's actions. See Anderson v. Creighton, 483 U.S. 635, 641 (1987); Ecclesiastical Order of the Ism of Am v. Chasin, 845 F.2d 113, 117 (6th Cir.1988). However, in the context of this case, plaintiffs' arguments persuade us that Pohlman could not reasonably have believed that the mere presence of the draw poker machines inside a liquor establishment was enough to justify seizure of the machines and criminal charges.
 
 
 25
 Although Reg. 53, which Pohlman relies upon to justify the arrests and seizure of the machines, was not specifically struck down until 1988 in State v. VFW Post 3562, it was strongly questioned as being overly broad by the Ohio Supreme Court's decision in Mills-Jennings of Ohio, Inc. v. Department of Liquor Control, 70 Ohio St. 95, ----, 435 N.E.2d 407, 411 (1982). In fact, counsel for ODLC conceded during oral argument before the Ohio Supreme Court in Mills-Jennings that Reg. 53 should not be interpreted to go beyond the specific provisions of the criminal code. On remand, the Ohio Court of Appeals clearly held that mere possession of a draw poker machine by a liquor establishment was not enough to establish illegality. Mills-Jennings of Ohio, Inc. v. Liquor Control Comm'n, 16 Ohio App.3d 290, ----, 475 N.E.2d 1321, 1325 (1984).
 
 
 26
 Consistent with its earlier concession to the Ohio Supreme Court, at the time of the raid on the Stagecoach in 1987, the ODLC refrained from prosecution short of evidence to establish "that the intent of the device on the premises is to gamble." J.A. 393. The injunction that plaintiffs rely on in this case became the basis of a 1988 holding of the Ohio Supreme Court in Garono v. State, 37 Ohio St.3d 171, 524 N.E.2d 496, that mere possession of a gambling device by a liquor establishment was not enough to establish illegality. Consistent with all these interpretations was Pohlman's own testimony that he understood the law to require more than mere presence of the machines inside a liquor establishment, i.e., a payoff. Qualified immunity is not intended to protect those who knowingly violate the law. Malley, 475 U.S. at 341; see Birrell, 867 F.2d at 958. Under these circumstances, we are convinced that Pohlman could not, and in fact did not, reasonably believe that the mere presence of the machines inside a liquor establishment was enough to establish their illegality.
 
 
 27
 Thus, the only basis for the seizure of the machines and the subsequent arrests is Pohlman's statements that he witnessed and received payoffs. If Pohlman made the statements falsely and knowingly, or with reckless disregard for their truth, then a constitutional violation is shown for which Pohlman had no immunity defense.
 
 
 28
 However, the individual members of the Beaver Township police force (including Massullo) are differently situated. They were relying on the assertions of a second law enforcement department that an offense had occurred. At the time it was not clearly established that this was not a reasonable basis for the probable cause needed for a seizure. See Donta, 774 F.2d at 721. Absent evidence that members of the township police force participated in Pohlman's alleged falsehood, the "team effort" rationale does not extend to the seizure.
 
 
 29
 In regard to the arrest, there is nothing to show that the defendant members of the Beaver Township Police Department pursued the matter beyond their participation in the search and seizure of the machines. Plaintiffs' allegations of conspiracy are only colorable at most. Accordingly, we hold that the summary judgments in favor of members of the township police force (including Massullo) were justified insofar as seizure of the machines and the subsequent arrest of the plaintiffs. On the other hand, we hold that the summary judgments in favor of Pohlman were inappropriate.
 
 F.
 
 30
 Before liability can be imposed on a governmental entity such as Beaver Township, there must be a showing that constitutional injury was inflicted "pursuant to a governmental custom or policy." Yancey v. Carroll County, 876 F.2d 1238, 1243 (6th Cir.1989) (citing Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978)). Based on Massullo's testimony that he had final control over day-to-day police matters and that he sometimes made policy without submitting his decisions to the township board of trustees, there is some evidence from which a jury could reasonably conclude that Massullo could set policy. See Johnson v. Hardin County, 908 F.2d 1280, 1286 (6th Cir.1990). However, a plaintiff must show that "deliberate and discernable municipal policies or customs" were the moving force behind the constitutional injury. Beddingfield v. City of Pulaski, 861 F.2d 968, 971 (6th Cir.1988). In this case plaintiffs have failed to even articulate what they perceive to be the "deliberate and discernable" policy, much less offer evidence to establish the existence of such policy. Consequently, we hold that the district court correctly granted summary judgment in favor of Beaver Township.
 
 G.
 
 31
 The final issue we address concerns plaintiffs' pendent state claims. Upon granting summary judgment on the federal claims, the district court dismissed the state claims pursuant to United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). To the extent that we have determined federal claims exist to support pendent jurisdiction, we disagree with the dismissal of the state claims.
 
 
 32
 Defendant Pohlman offers an alternate ground to oust the district court of jurisdiction over the state claims. Pohlman correctly cites Haynes v. Marshall, 887 F.2d 700, 704 (6th Cir.1989), for the proposition that Ohio state claims against state employees must be first presented to the Ohio Court of Claims. Since the district court is in a better position to determine whether or not there has been a presentation to the Ohio Court of Claims, and since the district court did not address this issue given its focus on other matters, we believe it is more appropriate to allow the district court to consider this argument on remand. See Dandridge v. Williams, 397 U.S. 471, 475 n. 6 (1970).
 
 III.
 
 33
 For the reasons stated, the summary judgments in favor of Beaver Township on the federal claims are AFFIRMED. The summary judgments in favor of members of the Beaver Township police force on the federal claims are AFFIRMED with regard to the seizure of the machines and the arrest of the plaintiffs but REVERSED with regard to the alleged unreasonable search of the plaintiffs and premises. The summary judgments in favor of defendant Pohlman on the federal claims are REVERSED. The dismissal of the pendent state claims is reversed to the extent that federal claims exist to support pendent jurisdiction, and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 Defendant Pohlman was named only in his individual capacity. The township police officers and Massullo were sued in both their individual and official capacities
 
 
 [2]
 We do not intend to indicate that plaintiffs may assert the constitutional rights of others such as patrons in this action; however, we do believe that the search of patrons is relevant to the reasonableness of the scope and manner of the search and to possible injury to Russo's business