**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  04a0187n.06**
**Filed:  December 21, 2004**

**No: 02-4291**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **DEMETRIOS PROKOS,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | **On Appeal from the United States** |
| | ) | **District Court for the Southern** |
| | ) | **District of Ohio** |
| **v.** | ) | |
| | ) | |
| **CITY OF ATHENS,** | ) | |
| **RONALD BROOKS and** | ) | |
| **WILLIAM BIDDLESTONE,** | ) | |
| | ) | |
| **Defendants-Appellees.** | ) | |

_____

Decided and Filed: _____

**Before: BOGGS, Chief Judge; GUY, Circuit Judge, and HOOD, District Judge.[1]**

**DENISE PAGE HOOD, District Judge.**  Appellant Demetrios Prokos appeals from the judgment entered by the United States District Court for the Southern District of Ohio. On October 3, 2002, the Honorable James L. Graham granted summary judgment to Appellees William Biddlestone and Ronald Brooks, which led to this appeal.  For the reasons set forth below, we affirm the district court's order.

**I.**

---

[1]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

This action stems from a March 28, 1999 fifteen-count grand jury Indictment against Appellant involving charges of extortion and theft before the Court of Common Pleas, Athens County, Ohio. (J.A. 286). Nine of the charges were dismissed by the trial court at the conclusion of the State's case. One charge was voluntarily dismissed by the prosecution, and the jury acquitted Mr. Prokos of the other five charges. Appellant subsequently filed a civil lawsuit against the City of Athens, Ohio, Appellee Brooks, a police officer, and Appellee Biddlestone, an Ohio prosecutor, alleging violations of Appellant's constitutional rights guaranteed by the First, Fourth, and Fourteenth Amendments to the constitution, pursued under 42 U.S.C. §1983; and a failure to adequately train, supervise, and discipline police officers of the City of Athens, Ohio. (J.A. 9). Appellees and the City of Athens, Ohio filed motions for summary judgment. (J.A. 67, 312). The City of Athens, Ohio was dismissed from the case on August 28, 2002 with prejudice. Appellant's case was dismissed as to Appellees on October 3, 2002. (J.A. 21). On October 30, 2002, Appellant filed a notice of appeal with this court. (J.A. 65).

Appellant immigrated from Athens, Greece when he was a child and subsequently became a United States citizen. After working as an engineer in Michigan and Ohio, Appellant became an entrepreneur and owned commercial and residential properties as well as several businesses, including an auto rental dealership, gas stations, convenience stores and a video rental business. (J.A. 10). Appellant was a respected member of the local business community. One of Appellant's gas stations/convenience stores, specifically, Pro-Gas II (Citgo chain) in Nelsonville, Ohio became unprofitable in mid-1998. (J.A. 11). Appellant instituted various measures in order to determine why this enterprise was losing money. Appellant hired a law enforcement student to pose as an employee while surveilling the other employees and installed additional surveillance equipment. *Id.* Ultimately, several employees were discovered to either have been stealing inventory or

money from Appellant's Pro-Gas II location. *Id.* These employees were confronted by Appellant individually and at different times when their thievery was discovered. *Id.* Appellant asserts that he attempted to work out a restitution plan with each of these employees in an effort to regain tens of thousands of dollars in revenue and inventory loss. (J.A. 13). Appellees argue that Appellant used this opportunity to recover more money than the money or its inventory equivalent that was stolen from him in an effort to achieve additional financial gain. Appellant counters this assertion by stating it was his full intention to have law enforcement officials present when these employees were scheduled to meet with him in order to make restitution. Appellant states that he notified the Federal Bureau of Investigation ("FBI") and requested their presence during these confrontations since the FBI was involved in capturing persons who had robbed one of Appellant's Athens stores in the past. When the FBI was contacted, they informed Appellant that local authorities had proper jurisdiction over this matter.

Appellant then contacted the Athens police requesting assistance because the location of the meetings for negotiating restitution was the Appellant's Athens store. Appellant alleges that the Athens police also declined to help him and referred him to the Nelsonville police department since the thefts had actually occurred in Appellant's Nelsonville store. Appellant then contacted the Nelsonville police, informing them that he wanted them to be present when these employees confessed to stealing and to witness the restitution exchange. Appellant allegedly was told that the Nelsonville police had no one to send to Athens and that he should handle the matter on his own. Based upon Appellant's efforts to have law enforcement involved when money exchanged hands, it is his contention that he was not attempting to extort money from these student employees.

The genesis of the extortion and theft charges which were ultimately brought against Appellant was a verbal complaint by a parent of one of the student employees, who lived in Indiana.

(J.A. 345-46).  This parent contacted an Alcohol, Tobacco, and Firearms ("ATF") agent, who was a friend of hers, about  Appellant's alleged threats against her child.  *Id.* The Indiana ATF agent contacted the FBI in Columbus, Ohio about the matter, and the FBI then referred the issue to Appellee Brooks. (*Id. &* J.A. 99). Appellee Brooks proceeded to contact several of the employees who were allegedly victims of Appellant's extortion and obtained statements. (*Id. &* J.A. 406-452).

At the conclusion of Appellee Brooks's investigation, he took the information he had to Appellee Biddlestone, who was already aware of the situation.  Upon Appellees' belief that probable cause existed to execute a search of Appellant's Pro-Gas II business, a search warrant was issued by Judge L. Alan Goldsberry of the Athens County Court of Common Pleas on March 19, 1999 and executed on the same day.   (J.A. 449-464).   Appellant was arrested and several items were seized from Appellant's business premises such as checks, files, tapes, receipt books, surveillance tapes, and bank records. (J.A. 451).  Appellant was ultimately charged with fifteen counts of extortion and theft and indicted on all of the charges.  (J.A. 286).  Nine of the charges were dismissed by the court during trial; the jury found Appellant not guilty on five of the charges; and the remaining charge of theft was also dismissed.  Appellant prevailed in the criminal case against him and then sought a civil remedy against Appellees and the City of Athens, Ohio.

All defendants in the district court filed dispositive motions which, as previously stated, were granted. Appellant now seeks appellate relief from this court against Appellees Brooks and Biddlestone only, claiming that the trial court erred in summarily dismissing his case when genuine issues of material fact exist relative to the specific claims at issue: (1) arrest without probable cause; (2) execution of a false and misleading search warrant; and (3) overbroad execution of a search warrant.

**II.**

We review *de novo* the district court's grant of summary judgment. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving parties. *Waters,* 242 F.3d at 358 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). Additionally, the judge must not weigh the evidence but rather must "determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986))(internal quotation marks omitted). There is a genuine issue for trial if there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson,* 477 U.S. at 252)(internal quotation marks omitted).

## III.

### A. Probable Cause to Arrest

Appellant asserts that Appellees had no probable cause to search his premises and arrest him on March 19, 1999. Appellant maintains that his Fourth Amendment rights were violated, thus supporting a §1983 action. Appellee Biddlestone argues that there was probable cause for the search and arrest to take place and, in any event, Appellee Biddlestone is absolutely immune from liability relative to this alleged constitutional violation. Appellee Brooks concurs that probable cause existed in order to support the law enforcement action taken. Appellee Brooks further argues that he is entitled to qualified immunity in this matter and Appellant's claims against him were properly dismissed.

The Supreme Court has defined "probable cause" for an arrest as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one

of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979); *see also, Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Courts therefore determine the existence of probable cause by using an objective standard. The mind set of the "reasonable officer" and not of the actual arresting officer is taken into account. *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000). A police officer will be liable for civil damages for an arrest if "no reasonably competent officer" would conclude that probable cause existed. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Probable cause requires only the probability of criminal activity, not some type of "*prima facie*" showing. *Illinois v. Gates*, 462 U.S. 213, 235 (1983). If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant. *See Evans v. Detlefsen*, 857 F.2d 330, 334 (6th Cir. 1988); *Donta v. Hooper,* 774 F.2d 716, 721 (6th Cir. 1985). A valid arrest based upon probable cause is not vitiated if the suspect is later found not guilty. *See Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir. 1988). The question of whether there was probable cause for an arrest is a mixed question of law and fact. *Gardenhire v. Schubert,* 205 F.3d 303, 312 (6th Cir. 2000). Generally, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible. *Id.* at 315 (quoting *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995)). We have held that mixed questions of fact and law are treated as questions of law. *Williams v. Mehra,* 186 F.3d 685, 690 (6th Cir. 1999)(en banc). The question then becomes, viewing the facts in a light most favorable to Appellant in this case, whether Appellees were justified in their belief that Appellant had probably committed or was committing acts of extortion. *Gardenhire*, 205 F.3d at 315.

Appellant argues that the employees' credibility was in question because the employees kept

changing their stories about the amount of the theft and they themselves did not contact the authorities. A mother of one of the employees contacted the ATF agent. Appellant further claims he was the victim; a good-faith creditor seeking restitution from his former employees.

The district court held as a matter of law that Appellee Brooks had probable cause to arrest Appellant, relying on *Ahlers v. Schebil,* 188 F.3d 365 (6th Cir. 1999). The district court found that before Appellee Brooks concluded that there was probable cause to arrest Appellant, Appellee Brooks interviewed and took statements of the employees and corroborated their stories by interviewing some of the parents and taping conversations between the employees and Appellant. (J.A. 57) Appellee Brooks also ran a records check on the employees and he carefully weighed the evidence before arresting Appellant. (J.A. 57-58) Appellee Brooks then met with Appellee Biddlestone, who advised him that probable cause had been established. (J.A. 59)

We agree with the district court's conclusion that while the employees may have stolen from Appellant, the arrest was based on the information that Appellant was attempting to extort more than his actual losses from the employees. Appellant was arrested for violating Ohio's extortion statute, ORC § 2905.11. Appellant presented no evidence to support his allegation that Appellee Brooks consciously disregarded the facts in his probable cause determination that Appellant had violated the extortion statute. Once probable cause has been established, an officer is under no obligation to continue the investigation to discover possible exculpatory evidence. *Ahlers*, 188 F.3d at 370. A victim's report is entitled to a presumption of reliability and veracity. *Id.* An officer is under no obligation to give any credence to a suspect's story. *Criss v. City of Kent,* 867 F.2d 259, 262-63 (6th Cir. 1988) We find that the district court correctly concluded as a matter of law that Appellee Brooks had probable cause to arrest Appellant on extortion. Summary judgment against Appellant was proper because Appellant had presented no evidence that Appellee Brooks consciously

disregarded the facts in his probable cause determination.

**B.    Collateral Estoppel**

The district court ruled that Appellant was precluded from raising the issue of probable cause to issue the search warrant because the matter had already been litigated in the related state court criminal matter in his motion to suppress.  (J.A. 24-28).  Issue preclusion, also referred to as collateral estoppel, is comprised of four elements:  (1) The party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) The issue must have been identical to the issue involved in the prior suit.  *Brady v. Brady*, No. 19006, 2002 WL 626963, \*3 (Ohio App. 2 Dist. Apr. 19, 2002).  "The purpose of collateral estoppel is to preclude 'the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action.'"  *New Winchester Gardens, Ltd. v. Franklin County Bd. of Revision* (1997), 80 Ohio St.3d 36, 41, 684 N.E.2d 312 (quoting *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 49 O.O.2d 435, 437, 254 N.E.2d 10, 13)).  Because Appellant filed a motion to suppress in the state criminal proceedings, the district court held that Appellant had a full and fair opportunity to litigate the issue of probable cause, which precluded Appellant from re-litigating the issue before the district court. (J.A. 24-28).

Applying the principles set forth in *Brady* to the present case, we agree with the district court and conclude that collateral estoppel is applicable in this case for several reasons.  First, Appellant argues that his motion to suppress filed in the state court, which was denied,  was not a final judgment because Appellant's acquittal negated the need to file an interlocutory appeal.  *See e.g.,*

*Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991) (an indispensable prerequisite to the application of collateral estoppel, includes the opportunity to appeal an adverse ruling-an opportunity denied to acquitted defendants); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995); *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989). However, in *Coogan v. City of Wixom,* 820 F.2d 170, 175 (6th Cir. 1987), we held that not having the opportunity to appeal a probable cause determination is not indicative of not having a full and fair opportunity to litigate the issue.

Second, it is undisputed that Appellant's motion to suppress did not result in an evidentiary hearing because Judge Goldsberry determined that Appellant was unsuccessful in meeting the threshold showing set forth in *Franks v. Delaware,* 438 U.S. 154, 171 (1978), which would have required proof that Appellee Brooks knowingly or recklessly made false statements in the search warrant affidavit. However, just because Appellant "did not meet the requirements under *Franks* to receive an evidentiary hearing does not limit the application of collateral estoppel." *Searing v. Hayes,* 684 F.2d 694, 697 (10th Cir. 1982). In addition to this fact, although Appellant was not extended the opportunity to conduct an evidentiary hearing, Appellant was able to place his arguments on the record relative to the alleged basis for an order of suppression by the district court. During the Appellant's suppression hearing in state court and within the text of the opinion of the state court denying Appellant's suppression motion, it is evident that the state court was on notice that the essence of Appellant's argument in favor of an evidentiary hearing was Appellees' alleged false statements in the search warrant affidavit as well as allegations of other misrepresentations. (J.A. 299-300, 571, 589).

When a plaintiff has sought to revisit the probable cause issue in a subsequent civil suit in federal court, this circuit has found merit to the claim only where the plaintiff was unable to place on the state court record allegations about false statements or misrepresentations by law enforcement

officials, or some basis to demonstrate sufficient evidence to require an evidentiary hearing on the issue of probable cause. *Hinchman v. Moore,* 312 F.3d 198, 202-04 (6th Cir. 2002); *Darrah v. City of Oak Park,* 255 F.3d 301, 310-11 (6th Cir. 2001); *Buttino v. City of Hamtramck,* 2004 WL 74655, *5 (6th Cir. 2004); *Josey v. Salisbury,* 1993 WL 476974, *2 (6th Cir. 1993). The case presently before the court does not come within the narrow exception carved out by this circuit.

Accordingly, the district court did not err when it granted summary judgment in favor of Appellee Brooks based upon the doctrine of collateral estoppel.

## C.  Qualified Immunity

Since we find no constitutional violation in this matter, the qualified immunity issue need not be addressed.

## D.  Search

Appellant asserts that because he has multiple businesses at one address, Appellees seized items outside the scope of the search warrant when records were confiscated relative to business unrelated to The Pro Gas II enterprise. We disagree. There is no evidence in the record that Appellant's multiple businesses were clearly delineated as being in separate offices and/or identified by different business names or suite numbers on the doors. Simply because Appellant keeps his business records for multiple businesses in his private office in the building for which the search warrant was executed, does not invalidate the search warrant. *United States v. Stefonek,* 179 F.3d 1030, 1032 (7th Cir. 1999); *United States v. Ofshe,* 817 F.2d 1508, 1514 (11th Cir. 1987).

The search warrant identified the building to be searched as a single-story building containing the Pro-Gas/Citgo convenience store and an Athens Video Store. The businesses are identified as being in the same building. Some of the items that were identified to be seized that were at 544 Richland Avenue in Athens, Ohio, were properly taken pursuant to the warrant. The

police were looking for any evidence regarding the commission of extortion and theft. The language in the search warrant was not limited to seizing records from only the Pro-Gas II and video store business. In any event, Appellant admitted that any records that were seized unrelated to the ex-employees at issue in this matter were returned expeditiously.

## IV.

For the foregoing reasons, we **AFFIRM** the decision of the district court to dismiss Appellant's claims.