28 F.3d 1213
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harry BOUT, Plaintiff-Appellant,
v.
Joseph ABRAMAJTYS, Defendant-Appellee.
 No. 93-1383.
 United States Court of Appeals, Sixth Circuit.
 July 7, 1994.
 
 Before: JONES, SUHRHEINRICH, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Harry Bout is an inmate at the Chippewa Regional Facility in Kincheloe, Michigan. Bout was previously imprisoned at the Brooks Regional Facility (LRF) in Muskegon, Michigan. He has instituted the present suit against the warden of LRF, Joseph Abramajtys,[1] under 42 U.S.C. Sec. 1983, alleging that an operating procedure implemented by Abramajtys dealing with outgoing legal mail violated his Fourteenth Amendment right of access to the courts and his Sixth Amendment right to effective representation. For the following reasons, we REVERSE.
 
 I.
 
 2
 The regulation at issue, Michigan Department of Corrections Operating Procedure OP-LRF/MTF-63.07, provides:
 
 
 3
 The only time postage will be credited to the prisoner's account is if he can prove that the mail must be delivered to a court or an attorney prior to the prisoner receiving additional funds to pay the postage himself. In order for the prisoner to be considered for a credit to his account, the prisoner must submit the documents to be mailed unsealed along with any supporting documentation and a disbursement authorization to his RUM/ARUM [Resident Unit Manager/Assistant Resident Unit Manager] for review. If the RUM/ARUM believes that credit should be provided, the RUM/ARUM will sign the disbursement authorization and forward all documents unsealed to the Inspector (MTF) or the ADW of Prisoner Services (LRF). If the Inspector (MTF) or the ADW Prisoner Services (LRF) can confirm that the mail must be delivered to a court or an attorney prior to the prisoner receiving additional funds, he/she signs the disbursement authorization.... Prisoners should be aware that any postage amount paid for on a temporary basis by the facility will be reimbursed to the facility as soon as the amount becomes available in the prisoner's account.
 
 
 4
 (Emphasis added.)
 
 
 5
 Plaintiff contends that he sought a "postage loan" pursuant to OP-LRF/MTF-63.07 on several occasions in an attempt to communicate with his attorneys, but that the prison staff, in accordance with the quoted operating procedure, has refused to accept from Bout sealed mail addressed to his attorneys.
 
 
 6
 The district court granted summary judgment for defendant, reasoning, inter alia, that plaintiff had failed to allege specific instances where a shortage of postage actually frustrated plaintiff in the litigation of a claim; and that the operating procedure was probably the only means available to protect the prison authorities' legitimate interest in guaranteeing that postage they provide free of charge is used only for legal correspondence. Plaintiff now appeals.
 
 II.
 
 7
 We review a grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate when the pleadings, affidavits, and other submissions demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Because plaintiff proceeded before the district court pro se, we hold his pleadings to less stringent standards than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972).
 
 
 8
 Although the precise constitutional underpinnings are not always clear, a prisoner's right of meaningful access to the courts is securely established in our jurisprudence. See John L. v. Adams, 969 F.2d 228, 231-32 (6th Cir.1992) (discussing various constitutional provisions articulated by Supreme Court); Knop v. Johnson, 977 F.2d 996, 1002-03 (6th Cir.1992) (same), cert. denied, 113 S.Ct. 1415 (1993); Brewer v. Wilkinson, 3 F.3d 816, 820-21 (5th Cir.1993) (same), cert. denied, 114 S.Ct. 1081 (1994). The Supreme Court has held that the concept of "meaningful access" encompasses the reasonable opportunity to communicate with an attorney. Procunier v. Martinez, 416 U.S. 396, 419 (1974) (citing Ex parte Hull, 312 U.S. 546 (1941)), overruled in part on other grounds, Thornburgh v. Abbott, 490 U.S. 413 (1989).[2] Furthermore, in the context of outgoing prisoner mail, the Court has invoked the First Amendment. See id. In Martinez, as limited by Abbott, the Court utilized the following test:
 
 
 9
 First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.
 
 
 10
 Id. at 413. See also Abbott, 490 U.S. at 411-13 (limiting Martinez to outgoing mail and reinterpreting Martinez as not requiring a strict "least restrictive means" test, but rather as requiring only that the regulation be "generally necessary" to a government interest).
 
 
 11
 Although we believe that OP-LRF/MTF-63.07 furthers an important interest unrelated to expression,[3] we conclude that the regulation exceeds the second limitation set forth in Martinez because there are less intrusive means available to further the governmental interest put forth by defendant in this case. First of all, the regulation gives virtually unbridled discretion to prison officials to "review" prisoners' mail, but does not specify the nature or limits of that review. Without procedural safeguards, there can be no assurance that a prison official will not read a prisoner's mail, thereby hampering a prisoner's "free and open expression" for fear that its contents will be read by his jailers. Martinez, 416 U.S. at 423 (Marshall, J., concurring). See also Smith v. Robbins, 454 F.2d 696, 697 (1st Cir.1972) (a prisoner may feel that someone in chain of command may not be trusted and resulting fear may chill communications between prisoner and his counsel). Second, the risk that the prisoner will attempt to send personal rather than legal mail to a court is speculative at best. Although that fear is somewhat heightened with mail addressed to supposed attorneys, this concern can be ameliorated by requiring prisoners to present in advance the name and business address of the attorney with whom they wish to communicate so that the prison officials may verify it in state and reference books containing attorneys admitted to practice. See Taylor v. Sterrett, 532 F.2d 462, 474 (5th Cir.1976). Finally, the regulation could impose some reasonable upper limit on how much may be provided in a given month. In this way, assuming that the correspondence was validly addressed to a court or an actual attorney, the determination of whether the prisoner should receive the advance would not require review of the document by a prison official.
 
 
 12
 In suggesting these alternatives, we in no way mean to suggest that no restrictions may be imposed or that these are the exclusive constitutional avenues available to the prison administration. However, we do wish to indicate that the presence of ready alternatives in this case is evidence that the regulation is overbroad. See Turner v. Safley, 482 U.S. 78, 90 (1987) (existence of obvious, easy alternatives may be evidence that regulation is not reasonably related to legitimate government interest). Plaintiff is therefore entitled to declaratory relief that OP-LRF/MTF-63.07 is unconstitutional. As for plaintiff's request for injunctive relief enjoining defendant and his staff from implementing or enforcing OP-LRF/MTF-63.07, the district court should consider whether such relief is still necessary given plaintiff's transfer of prisons.
 
 
 13
 Plaintiff correctly points out that defendant has at least implicitly denied plaintiff's allegations that defendant's subordinates have, on more than one occasion, refused to grant plaintiff credit for the cost of postage because of his refusal to comply with OP-LRF/MTF-63.07. Accordingly, because there is a genuine issue of material fact on the question of whether plaintiff's constitutional rights have been violated, we conclude that the grant of summary judgment to the defendant was improper.
 
 III.
 
 14
 For all the foregoing reasons, this matter is REVERSED and REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Defendant is sued in his individual capacity
 
 
 [2]
 Plaintiff's reference to a Sixth Amendment right to effective representation is inapposite, because "its reach is only to protect the attorney-client relationship from intrusion in the criminal setting." Wolff v. McDonnell, 418 U.S. 539, 576 (1974); see Brewer, 3 F.3d 816, 822 n. 8 (5th Cir.1993), cert. denied, 114 S.Ct. 1081 (1994)
 
 
 [3]
 Plaintiff argues that the regulation does not satisfy one of the substantial governmental interests of security, order and rehabilitation identified in Martinez as being legitimate governmental interests in the context of penal institutions. Contrary to plaintiff's assertion, we think that the regulation furthers an important government interest unrelated to expression; namely, the management of limited prison resources. Although not technically within the confines of the substantial interests articulated in Martinez, it is fundamental that fiscal considerations form the core of any orderly system