William **BELL–BEY,** Plaintiff–Appellant,

v.

Beverly **WILLIAMS,** Defendant–Appellee.

No. 95–1121.

United States Court of Appeals,
Sixth Circuit.

Submitted March 8, 1996.

Decided July 1, 1996.

William A. Bell–Bey (briefed), Baraga, MI, pro se.

Lisa C. Ward, Asst. Atty. (briefed), Ben D. Carter, Mich. Dept. of Atty. Gen., Corrections Div., Lansing, MI, for Defendant–Appellee.

Before: NELSON and SILER, Circuit Judges; WISEMAN, District Judge.[*]

SILER, Circuit Judge.

Plaintiff William Bell–Bey appeals the district court's grant of summary judgment for defendant Beverly Williams in this 42 U.S.C. § 1983 action.[1] For the reasons that follow, we affirm the decision of the district court.

## I. Facts

Bell-Bey resides at a maximum security state prison operated by the Michigan Department of Corrections ("MDOC"). Williams is the record officer supervisor of the prison, Ionia Maximum Correctional Facility. Pursuant to a policy directive, PD–BCF–63.03, and Michigan Administrative Rule 791.6603, MDOC provides indigent prisoners ten first-class stamps per month. Shadowing the language of Rule 791.6603(2), the policy directive states: "Additional postage will be provided to indigent prisoners, or loaned to non-indigent prisoners, for legal mail to courts or attorneys if necessary for pending litigation." The directive also requires:

All outgoing mail of segregation prisoners is subject to inspection, except mail from a prisoner to:

1. His/her designated attorneys
2. Any state or federal court
3. Any federal, state or local public official

\* \* \* \* \* \*

Mail from any prisoner to any of the above listed persons or agencies will be considered confidential. The prisoner will be allowed to seal such mail and it will not be opened or otherwise inspected.

Williams issued a memorandum ("the Memo") on November 18, 1993, which clarified the exact procedure for inmates to obtain postage:

Prisoner Mail Policy, PD–BCF–63.03, states "additional postage will be provided to indigent prisoners, or loaned to non-indigent prisoners if necessary for pending litigation." Pending litigation means litigation already accepted by the courts. Out-going legal mail meeting this criteria will have postage applied by the mail center when letter(s) are accompanied by approved, signed RDAs (Resident Disbursement Authorization). Mail not meeting criteria in policy will not have postage applied and will be returned to the prisoner.

Prisoners who have postage stamps may mail whatever they want. Indigent prisoners who have exhausted their indigence allowance and need additional postage to mail legal mail will have to prove the mail is for pending litigation. Proof will consist of showing the documents to the reviewing staff member who will be looking for court docket numbers, plaintiff versus, requests from either the court or attorney general for specific documents, etc. If requested information is not provided or prisoner refuses to show mail to staff reviewing mail, the letter(s) will not be processed. This also applies to non-indigent prisoners who have no funds available in their account. No postage loans will be made for letters not meeting policy guidelines.

---

[*] The Honorable Thomas A. Wiseman, United States District Judge for the Middle District of Tennessee, sitting by designation.

1. Plaintiff Samuel Dunham–Bey was dismissed from this case pursuant to this court's April 7, 1995 order, because he failed to file an appellate brief in accordance with local rules.

New lawsuits or requests for forms from courts will not be mailed at department expense. If an indigent prisoner wants to file a new lawsuit, he will have to wait until he has indigent postage available. A non-indigent prisoner will have to have sufficient funds on account to have his mail processed for new lawsuits.

According to an affidavit from the prison's warden, Raymond G. Toombs, prison employees inspect the mail in the prisoner's presence and look only for proof such as docket numbers or case titles. MDOC's policy does not authorize prison employees to "read" the prisoner's legal mail. After inspection, the prisoner is allowed to seal his legal mail in the presence of the prison employee. If the inspection indicated that the mail was not for pending litigation or if the prisoner refused to show the mail to the reviewing prison employee, the mail would not be sent out.

On November 29, 1993, Bell–Bey attempted to obtain additional postage for a letter. Bell–Bey, however, refused to allow the resident unit manager to inspect the legal mail, and his mail was returned undelivered. On December 13, 1993, Bell–Bey completed two forms to obtain a postage loan for letters addressed to two state courts. He identified the case numbers on the forms but refused to present any other proof that the mail regarded pending litigation. Accordingly, the letters were returned to him. Bell–Bey filed grievances which were subsequently denied by prison staff.

## II. Procedural History

In 1993, Bell–Bey filed a *pro se* claim under 42 U.S.C. § 1983, alleging that Williams violated his First Amendment rights of access to the courts and free speech and his Fourteenth Amendment substantive due process rights.[2] Bell–Bey alleged that the Memo authorized prison staff to deny him a postage loan unless they were allowed to "read" his outgoing legal mail. He re-quested compensatory and punitive damages against Williams and an injunction enjoining the prison from enforcing the requirements of the Memo which, he alleged, contradicted MDOC policy directives and rules. In 1994, Williams filed a motion to dismiss or, in the alternative, for summary judgment, asserting the defense of qualified immunity.

Finding the prison's inspection of outgoing legal mail (as directed in the Memo) constitutional, the district court rejected Bell–Bey's § 1983 claims. It specifically cited several facts validating the prison's policy: 1) prison officials are required to look for evidence that the mail regards pending litigation, but are not to read the mail; 2) the officials are to go to the prisoner's cell to conduct the inspection, and the prisoner must be given additional time to comply with the regulation if necessary; 3) the inspection is performed in the prisoner's presence; and 4) the entire inspection process is only triggered if the prisoner exceeds the monthly allotment of free stamps. Thus, the district court granted Williams' motion for summary judgment and dismissed all of Bell–Bey's claims. The thrust of Bell–Bey's argument on appeal is that the procedure outlined in the Memo violates his constitutional rights because it directs prison staff to open and read his legal mail.[3]

## III. Discussion

The district court's grant of summary judgment is reviewed *de novo*. *Moore v. Holbrook*, 2 F.3d 697, 698 (6th Cir.1993). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). All evidence is viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

2. Originally, another prison employee, Lynn Harsevoort, was named as a defendant. However, because she was not served summons, the district court subsequently dismissed her from the case for lack of prosecution.

3. He also alleges that the Memo allows prison staff to censor his outgoing legal mail, but there is no proof in the record of such conduct.

## A. Qualified Immunity

 Although Bell–Bey raises five points of contention on appeal, only two issues merit discussion.[4] With respect to the first issue, the doctrine of qualified immunity bars Bell–Bey's § 1983 action against Williams. Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted); *see also Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (holding the defense of qualified immunity to protect "all but the plainly incompetent or those who knowingly violate the law"). Qualified immunity is a purely legal question to be determined prior to trial. *Donta v. Hooper,* 774 F.2d 716, 719 (6th Cir.1985), *cert. denied,* 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987). The *Donta* court held, "If the law which the defendant is alleged to have violated is clearly established, then the qualified immunity defense should fail and discovery should proceed. If the law is not clearly established, the defendant is immune." *Id.* (citation omitted). The plaintiff bears the burden of proving that a "clearly established" right existed at the time the defendant's actions took place. *Tucker v. Callahan,* 867 F.2d 909, 913 n. 3 (6th Cir.1989). When inquiring whether a constitutional right is clearly established, the law of this circuit requires reference first to Supreme Court decisions and decisions of this circuit before finally looking to those of other circuits. *Daugherty v. Campbell,* 935 F.2d 780, 784 (6th Cir.1991) (citation omitted), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992).

 Bell-Bey first argues that Williams is not entitled to qualified immunity because she failed to comply with the prison's own policy directive, PD–BCF–63.03, which states that legal mail shall not be inspected. However, PD–BCF–63.03 could be interpreted to mean that outgoing legal mail will not be inspected *after* it is sealed. Regardless, "[t]he Supreme Court has made it clear that the failure to comply with state or federal regulations does not necessarily deprive government officials of qualified immunity." *Lavado v. Keohane,* 992 F.2d 601, 611 n. 5 (6th Cir.1993).

Bell-Bey next argues that case law clearly established a prisoner's right not to have his legal mail opened and read. The case law he cites, however, involves the opening of incoming legal mail *outside* of the prisoner's presence.[5] The Supreme Court has approved a prison policy authorizing the *opening* of legal mail in the prisoner's presence, but no mention is made of the officials actually *reading* the content of the mail. *Id.* at 608 (citing *Wolff v. McDonnell,* 418 U.S. 539, 577, 94 S.Ct. 2963, 2985, 41 L.Ed.2d 935 (1974)).

---

4. Three of Bell–Bey's contentions are meritless. First, the district court properly dismissed another defendant, Lynn Harsevoort, from the case for want of prosecution. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962) (holding courts have inherent power to dismiss *sua sponte* for lack of prosecution to effect orderly and efficient adjudication). In any event, the qualified immunity doctrine bars Bell–Bey's claims against Harsevoort. Second, the district court did not abuse its discretion by denying Bell–Bey's motion for a continuance to obtain discovery regarding the issue of qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."); *Donta v. Hooper,* 774 F.2d 716, 719 (6th Cir. 1985) ("[T]rial judge is to apply this purely objective test [of qualified immunity] as a matter of law before discovery occurs.") (citation omitted),

*cert. denied,* 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987). Finally, Bell–Bey's substantive due process claim is unavailing as the prison policy regarding legal mail does not shock the conscience. *Walker v. Norris,* 917 F.2d 1449, 1454 (6th Cir.1990) (noting in § 1983 case, defendant's conduct must "shock the conscience" before he will be held liable for violating a prisoner's substantive due process rights).

5. *See, e.g., Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir.1986) (citing several circuit court holdings that a prisoner's legal mail may not be read and may be opened only in the prisoner's presence); *but see Brewer v. Wilkinson,* 3 F.3d 816, 825 (5th Cir.1993) (finding no constitutional violation where incoming legal mail opened and inspected outside of prisoner's presence), *cert. denied,* —— U.S. ——, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994).

The inspection of Bell–Bey's mail would have been conducted in his presence.

■ In *Parrish v. Johnson,* 800 F.2d 600 (6th Cir.1986), this court did not expressly adopt the holdings of the circuits cited by Bell–Bey, which circuits "have held that mail relating to a prisoner's legal matters may not be read." *Id.* at 604 (citations omitted). This court, however, has held that a prisoner has a fundamental interest in preserving the confidentiality of his legal mail. *Muhammad v. Pitcher,* 35 F.3d 1081, 1083 (6th Cir.1994). Yet, the vast majority of case law cited by Bell–Bey is distinguishable because those cases: 1) address incoming rather than outgoing legal mail; and 2) do not involve a prison subsidy of the prisoner's postage.

In a recent unpublished case, *Bout v. Abramajtys,* 28 F.3d 1213, 1994 WL 329219 (6th Cir.1994), a panel of this court addressed MDOC's previous policy of inspecting outgoing legal mail. The *Bout* court noted that, "[a]lthough the precise constitutional underpinnings are not always clear, a prisoner's right of meaningful access to the courts is securely established in our jurisprudence." *Id.* at *1. (citations omitted). In *Bout,* MDOC's procedure required a prisoner to submit his legal mail, unsealed, to a Resident Unit Manager ("RUM") to determine if the mail was actually directed to an attorney or court, and, thus, deserving of a postage loan. *Id.* at *1. The RUM would then forward the unsealed legal mail to another prison official who would inspect the mail to confirm that it was to be delivered to an attorney or court. Bout was refused free postage because he submitted his legal mail in a *sealed* envelope. The *Bout* court held the MDOC procedure unconstitutional because "there are less intrusive means available to further the governmental interest" of ensuring that free postage is used only for legal correspondence. *Id.* at *2.

■ Despite the holding in *Bout,* Bell–Bey did not have a clearly established right because of the factual differences between the present case and *Bout.* In the present scenario, a prisoner may send as many sealed legal letters as he wants if he can afford the postage. Indigent prisoners are allotted ten free stamps per month, and non-

indigent prisoners may purchase stamps from the prison store. Therefore, MDOC's present policy directive is only triggered if the prisoner wants subsidized postage. Additionally, MDOC's inspection procedure calls for safeguards which limit the prison official's inspection of a prisoner's legal mail: 1) the official's inspection is limited to scanning legal mail for docket numbers, case title, requests for documents, et cetera; 2) the inspection is conducted in the prisoner's presence in his cell; and 3) the prisoner may seal his mail after the inspection is completed. These safeguards address the *Bout* court's concern that prison officials would have unbridled discretion to "review" a prisoner's mail. *Id.* at *2.

Although the prison officials contend that they are merely "inspecting" the legal mail in order to find proof that it pertains to pending litigation, Bell–Bey claims that they are "reading" prisoners' legal mail. In *Lavado,* this court noted, "we have held that opening/reading inmates' mail in 'arbitrary' or 'capricious' fashion does violate inmates' First Amendment rights." 992 F.2d at 609–10 (citation omitted). The prison employee in *Lavado,* however, opened legal mail outside of the inmate's presence, read the contents of the legal mail in the inmate's presence, and then handed the inmate a business card so that the inmate could spell the prison employee's name correctly when the inmate sued. *Id.* at 609. Bell–Bey's mail was neither opened outside of his presence nor read. Because the novel facts in this case differ from those posed in case law from the Supreme Court, from this circuit, and from our sister circuits, Williams neither knew nor could have known of the relevant legal standard pertaining to this type of mail inspection. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738–39. Moreover, Bell–Bey has not cited any well-established law holding Williams' actions to be unconstitutional at the time of the challenged conduct. *Tucker,* 867 F.2d at 913. Therefore, the defense of qualified immunity bars Bell–Bey's monetary claims against Williams.

**B. First Amendment**

■ The final issue is whether MDOC's inspection procedure as embodied in

the rules, policy directives, and Memo, is unconstitutional. Bell–Bey alleges that his First Amendment rights of free speech, access to the courts, and petition have been violated by the prison's inspection procedure. The *Lavado* court has recognized a First Amendment right associated with legal mail. *Lavado*, 992 F.2d at 609–10.[6] The Supreme Court has held:

> States [must] shoulder affirmative obligations to assure all prisoners meaningful access to the courts. It is indisputable that indigent inmates must be provided at State expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them.
>
> * * * * * *
>
> This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial.

*Bounds v. Smith*, 430 U.S. 817, 824–25, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977). MDOC provides meaningful access by allotting indigent prisoners ten stamps per month, which can be used to send sealed legal mail without inspection. MDOC considered the economic factors associated with loaning *additional* postage to prisoners, however, and concluded that the prisoner must prove the mail pertains to pending litigation. Because MDOC regulates *outgoing* mail, its inspection policy must "further an important or substantial government interest unrelated to the suppression of expression," and must not limit First Amendment freedoms "greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d

224 (1974); *Martucci v. Johnson*, 944 F.2d 291, 295–96 (6th Cir.1991). However, the *Martinez* standard does not require a "least restrictive alternative" analysis of the prison regulation. *Thornburgh v. Abbott*, 490 U.S. 401, 410, 109 S.Ct. 1874, 1880, 104 L.Ed.2d 459 (1989) (citations omitted).[7]

 ■ The first prong of the *Martinez* standard requires MDOC to "show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation." *Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811. Although the aim of MDOC's policy is to prevent prisoners from filing new lawsuits with subsidized postage, censorship of outgoing mail is not involved. The policy is unrelated to the suppression of free expression, and this court has already decided the issue of whether limiting postage expense is a substantial interest:

> Contrary to plaintiff's assertion, we think that the regulation furthers an important government interest unrelated to expression; namely, the management of limited prison resources. Although not technically within the confines of the substantial interests articulated in *Martinez*, it is fundamental that fiscal considerations form the core of any orderly system.

*Bout*, 1994 WL 329219, at *2 n. 3.

 ■ The second *Martinez* prong requires only that the prison regulation be "generally necessary" to a government interest. *Id.* at *2. Therefore, MDOC's inspection procedure does not have to be the least restrictive means of assuring that Bell–Bey's outgoing legal mail is, in fact, pertaining to pending litigation. The individual facts which accompany MDOC's inspection procedure militate in favor of finding the policy constitutional.

---

6. The Second and Tenth Circuits have also relied on the First Amendment to find constitutional violations, but in situations where outgoing legal mail was opened *outside* of the prisoner's presence. *See Bieregu v. Reno*, 59 F.3d 1445, 1450–51 (3d Cir.1995) (citing *Ramos v. Lamm*, 639 F.2d 559, 582 (10th Cir.1980); *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir.1986)).

7. The Supreme Court specifically overruled the standard advanced in *Martinez* with regard to incoming mail. *Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989). The *Thornburgh* Court, however, stated, "The implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials." *Id.* The Court then held that the *Martinez* standard still applied to outgoing mail.

### 1) Providing free postage for pending litigation

 MDOC has fulfilled its affirmative duty to provide indigent prisoners access to the courts. By allotting ten stamps per month, a prisoner may send ten sealed letters without being subject to inspection. If a postage loan is needed for a current suit, a prisoner may either submit proof that the mail pertains to pending litigation, or he may wait until the next month's allotment of postage. This policy follows the suggestion given by the *Bout* court: "[T]he regulation could impose some reasonable upper limit on how much [postage] may be provided in a given month." *Id.* at *2.

### 2) Opening mail in the prisoner's presence

 The Supreme Court held that "by acceding to a rule whereby the inmate is present when mail from attorneys is inspected (without being read), has done all, and perhaps even more, than the constitution requires." *Wolff v. McDonnell,* 418 U.S. 539, 577, 94 S.Ct. 2963, 2985, 41 L.Ed.2d 935 (1974). In *Wolff,* the Supreme Court upheld the constitutionality of a regulation providing that legal mail would not be read by prison officials, but only opened and inspected for contraband in the prisoner's presence. *Id.* Had MDOC's policy called for the mail to be inspected outside of the prisoner's presence, its validity might be called into serious question. However, the inspection is conducted in the prisoner's presence, in his cell.

### 3) Limited inspection

 In *Lavado,* this court specifically noted that we have not joined other circuits in holding that a prisoner's legal mail may not be read. *Lavado,* 992 F.2d at 610 n. 4. MDOC disputes Bell–Bey's contention that the policy directive calls for his legal mail to be read.[8] There is no proof that MDOC's policy directs officials to read prisoners' legal mail. If the policy did so, it could chill a

prisoner's free expression, communication with counsel, or access to the courts for fear his jailer reads the contents. *Bout,* 1994 WL 329219, at *2. The *Bout* court elaborated the reason for this concern:

> First of all, the regulation gives virtually unbridled discretion to prison officials to 'review' prisoners' mail, but does not specify the nature or limits of that review. Without procedural safeguards, there can be no assurance that a prison official will not read a prisoner's mail. . . .

After *Bout,* MDOC implemented procedural safeguards to ensure that a prison employee only looks for identifiable information. MDOC's safeguards in this case sufficiently collar the prison official's review of the mail. Furthermore, there is authority upholding the constitutionality of a cursory inspection of prisoner mail to ascertain whether it is, in fact, legal correspondence. In *Kendrick v. Bland,* 586 F.Supp. 1536 (W.D.Ky.1984), the court held:

> Where the state must provide the postage for indigent inmates in order to ensure their access to the courts, however, that absolute right [to seal and send all outgoing mail without inspection] may give way in order to allow the designated legal office supervisor to determine from the outside of the envelope, and if necessary a cursory glance at its contents, that it is a court or legal document destined to a court of competent jurisdiction, employed or appointed legal counsel, or [the Office for Public Advocacy].

*Id.* at 1554; *see also Lemon v. Dugger,* 931 F.2d 1465, 1467 (11th Cir.) ("If inspection of the envelope is not enough [to determine if the incoming correspondence is legal in nature], then the legal mail may be opened for inspection in front of the inmate, but only the signature and the letterhead may be read.").

### 4) Alternative avenues of access

 Given that the inspection procedure is triggered only after a prisoner exhausts his allotted postage, MDOC's policy does not

---

8. Bell-Bey also asserts that his legal mail was not delivered in retaliation for lawsuits he had filed against MDOC employees in the past. "[I]f the mail was actually read, and this action was motivated by retaliation as plaintiff alleges, such be-

havior by prison officials might constitute the type of arbitrary action proscribed by *Parrish,* 800 F.2d at 604." *Lavado,* 992 F.2d at 610. However, there is no proof that MDOC either retaliated against Bell–Bey or read his legal mail.

overburden a prisoner's right of access to the courts. *See Martinez,* 416 U.S. at 421, 94 S.Ct. at 1815. The method chosen by MDOC to limit the cost of protecting the prisoners' constitutional rights does not result in the total denial of those rights. *See Bounds,* 430 U.S. at 824–25, 97 S.Ct. at 1496–97. Bell–Bey is left with alternative access to the courts and legal counsel notwithstanding MDOC's policy. Hence, the district court properly denied Bell–Bey's request for injunctive relief.

## IV. Conclusion

"[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). The district court's decision is **AFFIRMED.**