NOT RECOMMENDED FOR PUBLICATION
File Name: 11a0147n.06

No. 09-1139

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 16, 2011**
LEONARD GREEN, Clerk

ANDRE COLEMAN, RALEEM-X, LEON
PERCIVAL, and JEFFERY CARNEY,

  Plaintiffs-Appellants

     v.

GOVERNOR OF STATE OF MICHIGAN,
PATRICIA CARUSO, Warden SANDRA
SCHULTZ MENGEL, KIMBERLY S. HAUSER,
HANNAH WATSON, JUDGE RICHARD
BANDSTRA, CHIEF JUDGE HOWARD C.
WHITBECK, MIKE BRYANTON, DAVID
BERGH, and BARBARA BOUCHARD,

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE:   KEITH, KENNEDY, and COOK, Circuit Judges.

  **PER CURIAM.** Plaintiff-Appellants are five pro se indigent prisoners who attempted to file civil claims in state court, but were denied the opportunity to do so pursuant to Michigan Complied Laws § 600.2963, which requires prisoners to pay full or partial court fees prior to filing civil claims. As a result, Plaintiffs brought suit against numerous state government officials in federal district court. Plaintiffs made three claims. First, they challenged the constitutionality of § 600.2963(8) on its face and as-applied to Plaintiffs; second, they challenged enforcement of the statute by state officials and Ingham County Circuit Court judges pursuant to 42 U.S.C. § 1983; and third, they

No. 09-1139
*Andre Coleman, et al. v. Governor Granholm, et al.*

contested the conditions of their state prison confinement. The district court dismissed Plaintiffs'

claims for lack of subject matter jurisdiction and/or failure to state a genuine issue of material fact.

For the following reasons, we **AFFIRM**.

**I**.

Plaintiffs Andre Coleman, Raleem-X, Leon Percival, Jeffrey Carney and Ron Denham

(collectively "Plaintiffs") are pro se indigent state prisoners from the following Michigan

Department of Corrections ("MDOC") prisons: the Alger Maximum Correctional Facility ("LMF");

the Gus Harrison Correctional Facility; and the Marquette Branch Prison. Between 2001 and 2004,

Plaintiffs attempted to file judicial review claims and petitions for writ of habeas corpus in Ingham

County Circuit Court and were denied the opportunity to file because of outstanding fees pursuant

to § 600.2963(8). Plaintiffs filed appeals from the Circuit Court's denial of their claims with the

Michigan Court of Appeals, which upheld the Circuit Court's decision. Plaintiffs did not file an

application for leave to appeal to the Michigan Supreme Court.

Section 600.2963 of the Michigan Compiled Laws governs filing fees for indigent prisoners

bringing civil actions or civil appeals in state court. It states, in pertinent part:

> (1) If a prisoner under jurisdiction of the department of corrections submits for filing
> a civil action as plaintiff in a court of this state or submits for filing an appeal in a
> civil action in a court of this state and states that he or she is indigent and therefore
> is unable to pay the filing fee and costs required by law, the prisoner making the
> claim of indigency shall submit to the court a certified copy of his or her institutional
> account, showing the current balance in the account and a 12-month history of
> deposits and withdrawals for the account. The court then shall order the prisoner to
> pay fees and costs as provided in this section. The court shall suspend the filing of
> the civil action or appeal until the filing fee or initial partial filing fee ordered under
> subsection (2) or (3) is received by the court. . . .

(7) For purposes of this section, the fact of a prisoner's incarceration cannot be the sole basis for a determination of indigency. However, this section shall not prohibit a prisoner from commencing a civil action or filing an appeal in a civil action if the prisoner has no assets and no means by which to pay the initial partial filing fee. If the court, pursuant to court rule, waives or suspends the payment of fees and costs in an action described in subsection (1) because the prisoner has no assets and no means by which to pay the initial partial filing fee, the court shall order the fees and costs to be paid by the prisoner in the manner provided in this section when the reason for the waiver or suspension no longer exists.

(8) A prisoner who has failed to pay outstanding fees and costs as required under this section shall not commence a new civil action or appeal until the outstanding fees and costs have been paid.

Mich. Comp. Laws § 600.2963. Plaintiffs challenge the constitutionality of § 600.2983(8) on its face and as applied in their cases. Specifically, Plaintiffs allege that the unlawful application of § 600.2963(8) violates their First Amendment right to access the courts and their Fourteenth Amendment right to equal protection of the law. Moreover, Plaintiffs' allege that § 600.2963(8) is unconstitutional because it bars the filing of a combined action by prisoners.

Plaintiffs also filed a § 1983 suit seeking monetary and injunctive relief against Ingham County, Ingham County Circuit Judge William Collette, Ingham County Circuit Judge Peter Houk, Ingham County Circuit Court administrator David Easterday, Ingham County Circuit Court clerk Mike Brayton and law clerk Damian Fisher (collectively, "Ingham County Defendants") and Sandra Schultz Mengel, Kim Hauser, Hannah Watson, Angela Dissessa, Judge Richard Bandstra and Judge William C. Whitbeck[1] (collectively, "Court of Appeals Defendants") for their enforcement of § 600.2963(8) against Plaintiffs.

---

[1]Plaintiffs incorrectly identified Judge Whitbeck of the Michigan Court of Appeals as "Judge Howard C. Whitbeck," which also appears in the case caption.

Plaintiffs' conditions of confinement claims arise out of their placement in administrative segregation. They allege constitutional violations relating to the denial of appliances, uncomfortable shoes, inadequate dental products, use of bright lights in cells up to and exceeding 18 hours a day, infringement on their right to free exercise of religion and denial of access to court contrary to their First, Eighth and Fourteenth Amendment rights. These claims were filed against MDOC Director Patricia Caruso, LMF Warden David Bergh, former LMF Warden Barbara Bouchard and Ionia Maximum Correctional Facility Warden Willie O. Smith (collectively, the "MDOC Defendants") only.

Plaintiffs filed their suit with the district court on or around January 16, 2007. Having accepted and adopted the recommendation of a magistrate judge, the district court granted summary judgment to the MDOC Defendants on April 2, 2008. On August 14, 2008, the magistrate judge filed a Report and Recommendation to grant Ingham County Defendants' motion to dismiss for lack of subject matter jurisdiction. Over Plaintiffs' objections, the district court adopted the recommendation and granted the Ingham County Defendants' motion. The district court denied Plaintiffs' counter-motion for summary judgment as to the remaining Court of Appeals Defendants on December 15, 2008, instead dismissing the claims against Court of Appeals Defendants as well. Plaintiffs timely appealed to this Court.

## II.

### A.

The district court dismissed Plaintiffs' constitutional challenge to § 600.2963(8) for lack of subject matter jurisdiction. The initial question in this case, then, is whether the district court and

this Court have authority to review the substance of this matter pursuant to the *Rooker-Feldman* doctrine. This Court reviews de novo a district court's ruling that the *Rooker-Feldman* doctrine precludes subject matter jurisdiction. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008).

**B.**

The Supreme Court first held that, pursuant to 28 U.S.C. § 1257, lower district courts lacked the subject matter jurisdiction to directly review state court decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Accordingly, only the Supreme Court of the United States has the jurisdiction to review state court decisions. *Rooker*, 263 U.S. at 416. Sixty years later, the Supreme Court reaffirmed this holding in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). There, the plaintiff challenged the District of Columbia's rule for bar admission in the district court after being denied permission to sit for examination by the District of Columbia Court of Appeals. *Feldman*, 460 U.S. at 468-69. The Supreme Court upheld the district court's dismissal of the claim for lack of subject matter jurisdiction, noting that "[i]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial [of a claim] in a judicial proceeding . . . then the District Court is in essence being called upon to review the state court decision. This the District Court may not do." *Id.* at 482 n.16. Together, the *Rooker* and *Feldman* decisions have combined to make the *Rooker-Feldman* doctrine, which prohibits district courts from conducting appellate review of state court decisions.

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Court held that the *Rooker-Feldman* doctrine applied to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district

court review and rejection of those judgments." 544 U.S. 280, 284 (2005). Nevertheless, where an individual makes a claim concurrently with or independent from the state court proceeding, the Supreme Court emphasized that the district court has jurisdiction to review that claim. *Id.* at 293. As the Court notes, "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (internal quotations omitted).

The Sixth Circuit explains the inquiry to whether the *Rooker-Feldman* doctrine applies after *Exxon* as follows:

> The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). In *McCormick*, the plaintiff fully litigated issues pertaining to property she obtained through a divorce proceeding in state court. *Id.* at 386-87. However, she filed a suit in district court after the decision alleging that the fraud of a third party caused her injury during the state-litigated suit. *Id*. at 388. This court held that the district court lacked subject matter jurisdiction over the claims seeking review of the state court decision, but that it did have jurisdiction to hear the independent claims based upon the injury caused by third party fraud. *Id*. at 394-95.

Here, Plaintiffs challenge the constitutionality of § 600.2963(8) as applied to Plaintiffs by Defendant Judges and their clerks of court. They challenge the constitutionality of Judge Houk's

Administrative Order 2001-5,[2] which directs the court to apply § 600.2963(8) to all pleadings brought by indigent inmates. They allege that, in application, the statute has denied Plaintiffs their right to file fact-and-duration confinement claims, habeas petitions and judicial review claims contrary to Mich. Comp. Laws §§ 600.5505(1) and 600.5531(a).[3]

Plaintiffs also challenge the facial constitutionality of § 600.2963(8). First, they allege that "on its face [the statute] bars the filing of a combined action where the state and individual defendants cannot be sued in a single court" due to jurisdiction and venue limitations. Second, Plaintiffs allege that § 600.2963(8) denies prisoners access to court until they have paid all applicable filing fees. The Ingham County Circuit Courts have applied this statute regardless of whether prisoners file a civil action or appeal or are paying the fees to the best of his or her ability. Finally, they raise a federal preemption claim relating to the prisoners' ability to bring § 1983 claims. Plaintiffs allege that § 600.2963(8) violates the Supremacy Clause by "unlawfully plac[ing] a limit on Federal Civil rights litigation, which is regulated only by Congress."

---

[2]Judge Houk's Administrative Order, 2001-5, states: "in accordance with MCL 600.2963(8) prisoners shall not be allowed to file a new lawsuit until they have paid any outstanding fees and costs on previous lawsuits filed in the 30th Circuit Court."

[3]Section 600.5505(1) indicates that § 600.2963 "applies to civil actions concerning prison conditions." Mich. Comp. Law § 600.5505(1). Section 600.5531(a) defines "civil action concerning prison conditions" as "any civil proceeding seeking damages or equitable relief arising with respect to any conditions of confinement or the effects of an act or omission of government officials, employees, or agents in the performance of their duties, but does not include proceedings challenging the fact or duration of confinement in prison, or parole appeals or major misconduct appeals under . . . MCL 791.234 and 791.255." Mich. Comp. Law § 600.5531(a).

All of these claims constitute "as applied" constitutional challenges and are barred by the *Rooker-Feldman* doctrine. Following the *McCormick* analysis, Plaintiffs' source of injury from § 600.2963(8) originates from the state court's application of the statute to Plaintiffs—either through refusal to file judicial-review claims, duration-of-confinement claims and petitions for writ of habeas corpus or through refusal to grant fee waivers pursuant to § 600.2963(7). While Plaintiffs argue that the court's refusal to file the pleadings was an administrative task, the Supreme Court has held that a "judicial inquiry in which the court was called upon to investigate, declare, and enforce liabilities as they stood on present or past facts and under laws supposed already to exist" will constitute a judicial decision for the purposes of the *Rooker-Feldman* doctrine. *Feldman*, 460 U.S. at 479 (internal quotation marks omitted). Plaintiffs were denied filing and petitioning based upon past facts and the state court's interpretation of those facts in light of § 600.2963(8).

Even when considering Plaintiffs' request for injunctive relief against future fee waivers or judicial petitions, this court cannot grant this request without predicating the decision on a determination that the state court's prior decisions to deny fee waiver were improper. *See Lawrence*, 531 F.3d at 371 (following other circuits in finding that "claims seeking injunctive relief are barred by *Rooker-Feldman* if they necessarily require the federal court to determine that a state court judgment was erroneously entered" (string citations omitted)); *Patmon v. Mich. Supreme Court*, 224 F.3d 504, 510 (6th Cir. 2000) (rejecting plaintiff's general constitutional challenge to § 600.2963 because the core of his claim was that the state rule was unconstitutional as applied to him); *Carney v. Christiansen*, 422 F. Supp. 2d 841, 849-50 (E.D. Mich. 2006) (same). Any attempt to review the Circuit Court's application and interpretation of § 600.2963(8) to Plaintiffs by the district court

would amount to an appellate review of the state court's decision on this matter. Plaintiffs' proper recourse for these challenges must be the Michigan state court system and ultimately the Supreme Court of the United States. Because the district court lacks subject matter jurisdiction over such a claim, the district court correctly dismissed Plaintiffs' constitutional challenges to § 600.2963(8).

**III**.

Next, Plaintiffs attempted to bring suit against the Ingham County Defendants[4] and the Court of Appeals Defendants in their judicial capacity for enforcement of § 600.2983(8).[5] This Court

---

[4]Plaintiffs also brought suit against Ingham County. A municipal government does not enjoy absolute immunity. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). However, here Ingham County is only implicated as the location of a *state* court. Because Plaintiffs failed to allege any offense by Ingham County in executing § 600.2963(8), the district court correctly dismissed this claim on summary judgment.

[5]In his brief, Plaintiff Coleman also appealed from the voluntary dismissal of Defendants Bay County and Judge Kenneth W. Schmidt (collectively "Bay County Defendants") on the grounds that he was unable to communicate with the other Plaintiffs not to agree to the dismissal and furthermore that his later motion for reinstatement of claims filed with Bay County had been denied. However, following Judge Duggan's well-written opinion and order dismissing Bay County, these claims are moot:

> Plaintiffs admission that "Arenac County is the proper county for as-applied challenges by Plaintiffs Coleman-Bey and Denham-Bey" renders any as-applied challenges to Section 600.2963(8) of Michigan Complied Laws against Bay County moot. Moreover, to the extent that Plaintiffs are asserting a facial challenge to Section 600.2963(8), every county in Michigan need not be named. Consequently, this Court will dismiss Defendant Bay County.

*Coleman v. Granholm*, No. 06-12485, 2007 WL 2461695, at *2 (E.D. Mich. Aug. 27, 2007). Moreover, to the extent that Plaintiff Coleman-Bey raises any new claims against the Bay County Defendants on appeal, this Court will not consider them here. *The Glidden Co. v Kinsella*, 386 F. App'x 535, 544 (6th Cir. 2010) ("This Court's review is limited to issues 'presented to and

reviews de novo whether absolute judicial immunity is available in the context of a Rule 12(b)(6)

motion to dismiss. *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).

Judges generally are absolutely immune from civil suits for money damages under § 1983.

*Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *see also Stump v. Sparkman*, 435 U.S. 349, 359 (1978)

("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority

is flawed by the commission of grave procedural errors."). Furthermore, "[b]y enacting the 1996

Federal Courts Improvement Act . . . Congress . . . expanded the ambit of judicial immunity by

amending § 1983 so as to prohibit injunctive relief against a judicial officer." *Gilbert v. Ferry*, 298

F. Supp. 2d 606, 611 (E.D. Mich. 2003); *see* Federal Courts Improvement Act of 1996, Pub. L. No.

104-317, § 309(c), 110 Stat. 3847, 3853 (codified at 42 U.S.C. § 1983).

Absolute judicial immunity applies not only to judges, but has extended, in the form of quasi-

judicial immunity, to any person acting as an arm of the absolutely immune judicial officer. *See*

*Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (holding that where employee's involvement

"necessarily arose in the execution of the [judicial] order," absolute quasi-immunity applies).

Absolute immunity may be overcome in two situations: first, a judge is liable for nonjudicial

actions; second, a judge is not immune for actions taken in complete absence of all jurisdiction.

*Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997).

Here, Plaintiffs challenge judicial enforcement of Administrative Order 2001-5. As the

district court correctly states, the Administrative Order 2001-5 "qualifies as a judicial action

---

considered by the district court, unless review of an issue is necessary in order to prevent manifest
injustice, promote procedural efficiency, or correct clear errors or omissions.'" (citation omitted)).

performed in Judge Houk's official judicial capacity." The order interprets § 600.2963(8) and advises arms of the judges, including their clerks, to execute their statutory interpretation. Plaintiffs argue that Court of Appeals and Ingham County Defendants acted in the absence of jurisdiction in executing the Administrative Order, but they fail to provide a compelling reason for this assertion. While the order was made *ex parte*, "[t]he informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." *Forrester v. White*, 484 U.S. 219, 227 (1988). Therefore, Judge Houk's Administrative Order does not fall within the exceptions to absolute judicial immunity and Defendants Bandstra, Whitbeck, Houk and Collette are absolutely immune from injunctive or monetary relief. Furthermore, the clerks and administrators were merely executing Judge Houk's order by denying Plaintiffs pleadings pursuant to § 600.2963(8). Therefore, quasi-judicial immunity prevents injunctive or monetary relief from these Defendants as well.

**IV**.

Plaintiffs also appeal the district court's grant of summary judgment in favor of the MDOC Defendants concerning the conditions of administrative segregation confinement. This Court has jurisdiction to review appeals from final judgments of district courts pursuant to 28 U.S.C. § 1291. This Court reviews the district court's grant of summary judgment de novo. *Bell-Bey v. Williams*, 87 F.3d 832, 835 (6th Cir. 1996). This Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists for trial unless,

viewing the evidence in the light most favorable to the nonmoving party, a reasonable jury could

return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A.

Plaintiff Percival alleged that MDOC policy prevented the exercise of his constitutional right

to access the courts. It is well established that prisoners have a constitutional right to access the

courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *overruled in part by Lewis v. Casey*, 518 U.S.

343 (1996). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigation engines . . . . The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of any *other* litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Casey*, 518 U.S. at 355. At the least, prisoner officials must provide all inmates with paper and pen

to draft legal documents, notary services to authenticate the papers, and stamps to mail them. *See*

*Bounds*, 430 U.S. at 828; *Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991). When reviewing

a prison regulation, we apply a deferential standard of review. *Casey*, 518 U.S. at 361 ("[A] prison

regulation impinging on inmates' constitutional rights is valid if it is reasonably related to legitimate

penological interests." (internal quotations omitted)).

Here, Plaintiff Percival alleges that the MDOC Defendants denied him access to the courts

by denying him the opportunity to use the typing room for more than two hours a day, as required

under MDOC policy. He also claims that the MDOC policy allowing corrections officials extended

time to respond to inmate misconduct citations violates his First Amendment right to access the

courts. Neither of these claims prevail given the deferential standard we apply when reviewing prison regulations. As the district court notes, "[l]imitation on typing may be inconvenient, but it is not obvious why it is a bar to litigating, particularly given this and most courts['] willingness to accept handwritten pleadings" and "internal grievance policy does not directly affect Plaintiff's ability to bring his claim before any court." *Coleman v. Granholm*, No. 06-12485, 2008 WL 919642, at *9, *10 (E.D. Mich. Apr. 2, 2008). The MDOC Defendants produced written policy noting that access to courts may be limited for "reasons of security." Limited access to typewriters reasonably relates to MDOC's legitimate penological interest in security. Moreover, Plaintiff failed to show any actual injury related to access to courts caused by the extended deadlines for prison misconduct. Therefore, both access to court claims were correctly dismissed on summary judgment.

**B.**

Next, Plaintiffs challenge the conditions of their confinement as violations of the Eighth Amendment. "[T]he Eighth Amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted) (internal quotation marks omitted). While there is no "static test" to determine whether the conditions of confinement violate the Eighth Amendment, prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's health. *Id.* at 346-47; *see also Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In relation to the conditions of confinement, the Eighth Amendment only addresses "deprivations of essential food, medical care or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 398. Plaintiffs' allegations do not amount

to the type of deprivations referenced in *Rhodes*. Plaintiffs do not deny that, in administrative segregation, they get out-of-cell exercise, though they do not like the time of day it is offered. And while Plaintiffs complain of lack of access to televisions, better shoes, specific dental products and different lighting, they fail to establish a constitutional right to any of these amenities. In short, these complaints amount to the incidental constitutional consequences of conviction and incarceration. Therefore, the district court correctly dismissed this claim on summary judgment.

## C.

The district court also correctly dismissed Plaintiffs' claims that MDOC policies deny prisoners in administrative segregation religious exercise pursuant to section 3 of the Religious Land Use and Institutionalized Person Act of 2000, codified at 42 U.S.C. § 2000cc-1 ("RLUIPA"). Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden furthers "a compelling governmental interest" and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1) to (2); *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005). Courts entertaining complaints under § 3 should apply "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter*, 544 U.S. at 723 (quoting 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sen. Hatch and Sen. Kennedy).

Here, MDOC policy limits inmates in administrative segregation to basic television programming. In addition, MDOC policy prohibits battery-operated appliances in administrative segregation. As a result, Plaintiffs allege that the MDOC Defendants have placed a substantial

burden on their right to exercise freedom of religion. However, the MDOC Defendants provided a sworn affidavit indicating that Plaintiffs "have access to religious materials and may request additional religious reading materials from the Institutional Chaplain, and can correspond in writing and receive religious visits." Plaintiffs fail to show how the MDOC policies have placed substantial pressure on an inmate to violate his or her religious beliefs or effectively bar an inmate from exercising his religion. *See Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 737 (6th Cir. 2007) (declining to set a bright line test to measure a substantial burden under RLUIPA in the context of land use). The policies do not prevent Plaintiffs from receiving religious materials through alternate methods other than radio or television. They may receive religious literature via the mail and may receive visitors at the prison to discuss their religious beliefs. Accordingly, the district court correctly dismissed the claim on summary judgment.

**D.**

Plaintiffs also allege that their placement in and the conditions of administrative segregation violate the procedural-due-process protections of the Fourteenth Amendment. Procedural-due-process claims have two elements: "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right [does a court] continue to consider whether the deprivation of that interest contravened notions of due process." *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).

Plaintiffs Percival and Carney assert that a settlement agreement in a previous Michigan prisoners' class action suit gave them a right to "meaningful in-cell activity, mental health evaluations, and religious, education, and recreational access;" the MDOC Defendants allegedly

deprived Plaintiffs of this right by abolishing the prisoner sub-class subject to the settlement agreement and transferring Plaintiffs to their current administrative segregation unit. Even assuming that the settlement agreement cited by Plaintiffs give rise to a protected liberty interest, *see Vigili v. Gilbert*, 272 F.3d 391, 395 n.1 (6th Cir. 2001) ("This Court is unaware of cases in this circuit that address whether settlement agreements can give rise to liberty interests."), any such interest "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). "[T]he nature and duration of an inmate's segregation may affect whether the State has implicated a liberty interest that warrants due-process protection – as do the other *Sandin* factors, such as whether the segregation will affect the overall duration of the inmate's sentence." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Plaintiffs claim that the MDOC Defendants "have drastically increased the length of stay in segregation for every offense," and allege that the MDOC Defendants have given them unclear and conflicting information as to how and when they might be released from segregation. Thus, the duration of their segregation might weigh in favor of a conclusion that the MDOC Defendants have infringed Plaintiffs' cognizable liberty interest. However, Plainitffs have failed to demonstrate that the nature of their segregation exceeds the basic discomforts indicative of the "ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. While Plaintiffs allege that their segregation is "atypically and significantly worse than every level v seg unit in the state," they identify only a handful of adverse

regulations that apply to them by virtue of their segregation, for example more restrictive rules as to the types of cassette players they may possess, access to fewer television channels, and less-than-ideal exercise equipment. As these complaints do not rise to the level of "atypical and significant hardships," *id.*, the district court rightly dismissed Plaintiffs' due process claims.

**E.**

Plaintiffs also object to the prison's policy of providing a cable television package to general-population prisoners with more channels than that offered to administrative-segregation prisoners, asserting that it violates the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause prohibits states from "mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (citing *Vacco v. Quill*, 521 U.S. 793, 799 (1997)).

Prisoners are not a suspect class, *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005), nor are prisoners placed in administrative segregation vis-a-vis general population prisoners, *see Williams v. Vidor*, 67 F. App'x 857, 860 (6th Cir. 2003), and Plaintiffs have not alleged that they otherwise belong to a suspect class. It is beyond question that access to cable television is not a fundamental right. Therefore, Plaintiffs had the burden of proving that MDOC's policy lacked a rational basis, which they might satisfy in one of two ways: "either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005) (internal quotation marks omitted). Plaintiffs have done neither, as they

complained only that MDOC struck a deal under which a cable company provides sub-standard service to the prison facilities at a discount price, despite prisoners' express wish that prison funds earmarked for inmate entertainment be spent differently. Therefore, the district court correctly dismissed this claim.

## V.

For the foregoing reasons, we **AFFIRM** the dismissal of the constitutional claims for lack of subject matter jurisdiction, **AFFIRM** the dismissal of § 1983 claims against Court of Appeals and Ingham County Defendants for judicial immunity, and **AFFIRM** the grant of summary judgment to the MDOC Defendants for the conditions of confinement claims filed by Plaintiffs.